CAROLYN M. SPROLES AND HUSBAND, CHARLES B. SPROLES v. DAVID REED GREENE, TRAVELERS INDEMNITY INSURANCE COMPANY AND UNITED STATES FIDELITY AND GUARANTY COMPANY

JAMES A. PHILLIPS AND WIFE, RITA L. PHILLIPS v. DAVID REED GREENE, TRAVELERS INDEMNITY INSURANCE COMPANY AND AETNA CASUALTY & SURETY COMPANY

CAROLYN M. SPROLES AND HUSBAND, CHARLES B. SPROLES v. TRAVELERS INDEMNITY COMPANY OF AMERICA, UNITED STATES FIDELITY AND GUARANTY COMPANY AND THE AETNA CASUALTY & SURETY COMPANY

CAROLYN M. SPROLES AND HUSBAND, CHARLES B. SPROLES v. INTEGON GENERAL INSURANCE CORPORATION

No. 482PA90

(Filed 14 August 1991)

**1. Insurance § 87.1 (NCI3d)— automobile liability insurance— employees of corporation not named insureds**

Employees of a corporation are not included as named insureds for purposes of underinsured motorist coverage when only the corporation is listed as the named insured on an automobile liability insurance policy, since a corporation is a legal entity which is separate from its employees.

**Am Jur 2d, Automobile Insurance §§ 246, 316.**

**2. Insurance § 69 (NCI3d)— underinsured motorist coverage— employees injured on business trip—vehicle not owned by employer—no coverage**

The Court of Appeals was correct in affirming the trial court's determination that plaintiffs were not covered by their employer's underinsured motorist coverage under its Aetna policy, since plaintiffs were class two insureds; class two insureds were afforded UIM coverage under the terms of the policy only when they were injured while occupying a "vehicle to which the policy applie[d]," that is, a vehicle owned by the employer; and plaintiffs in this case were injured while on company business but while in a vehicle belonging to one other than their employer.

**Am Jur 2d, Automobile Insurance §§ 311, 314.**

SPROLES v. GREENE

[329 N.C. 603 (1991)]

3. **Insurance § 110.1 (NCI3d)— automobile liability insurance— prejudgment interest—insurer not required to pay**

The Court of Appeals erred in concluding that defendant liability insurer was required to pay prejudgment interest in addition to its limit of liability under the policy, since the insurer, pursuant to the language of the policy, agreed to pay only the costs of the defense, which would include attorney fees, deposition expenses, and subpoena and witness fees, but defendant did not agree to pay "all costs taxed against the insured" which would include prejudgment interest.

**Am Jur 2d, Automobile Insurance § 428.**

4. **Insurance § 110.1 (NCI3d)— automobile liability insurance— postjudgment interest on amounts in excess of policy limits— insurer not required to pay**

The Court of Appeals erred in concluding that the provision in defendant liability insurer's policy governing the payment of postjudgment interest conflicted with N.C.G.S. § 24-5 and was therefore without effect, since that statute was not part of the Financial Responsibility Act and therefore was not "written" into the liability policy as a matter of law, and there was no provision in the Financial Responsibility Act requiring a liability insurer to pay postjudgment interest on amounts in excess of its policy limits even though such interest might properly be taxed against the insured.

**Am Jur 2d, Automobile Insurance § 428.**

**Liability insurer's liability for interest and costs on excess of judgment over policy limit. 76 ALR2d 983.**

5. **Insurance § 110.1 (NCI3d)— insurer's responsibility for post-judgment interest—offer to pay on day verdict returned— responsibility for interest tolled**

Defendant liability insurer's "offer to pay" its policy limits made on the same day that the verdict was returned was sufficient under the terms of the policy to toll the insurer's responsibility for postjudgment interest even though the actual payment was not made until thirteen days later.

**Am Jur 2d, Automobile Insurance § 428.**

Justice MARTIN did not participate in the consideration or decision of this case.

## SPROLES v. GREENE

[329 N.C. 603 (1991)]

ON discretionary review of the decision of the Court of Appeals, 100 N.C. App. 96, 394 S.E.2d 691 (1990), affirming in part and reversing in part an order entered by *Lamm, J.*, in the Superior Court, MITCHELL County, on 5 February 1988. Heard in the Supreme Court 10 April 1991.

*Van Winkle, Buck, Wall, Starnes and Davis, P.A., by Roy W. Davis, Jr., and Michelle Rippon, for plaintiff appellants-appellees Sproles.*

*Patla, Straus, Robinson & Moore, by Harold K. Bennett, for plaintiff-appellants Phillips.*

*Roberts, Stevens & Cogburn, P.A., by Steven D. Cogburn and W. O. Brazil, III, for defendant-appellant Integon General Insurance Corporation.*

*Weinstein & Sturges, P.A., by Cynthia Stakias, for defendant-appellee The Aetna Casualty & Surety Company, Inc.*

*Manning, Fulton & Skinner, by John B. McMillian, for National Association of Independent Insurers and North Carolina Farm Bureau Mutual Insurance Company; Moore & Van Allen, by George M. Teague, for Insurance Guaranty Association and Alliance of American Insurers, amici curiae.*

FRYE, Justice.

In this appeal plaintiffs contend that the Court of Appeals erred in determining that they were not covered by underinsured motorist (UIM) coverage provided by defendant Aetna Casualty and Surety Company (Aetna) to plaintiffs' employer Lakeview Nursery and Garden Center, Inc. (Lakeview). Defendant Integon General Insurance Corporation (Integon) contends that the Court of Appeals erred in determining that Integon was obligated to pay prejudgment and postjudgment interest on $750,000, the entire amount of damages awarded to plaintiff Carolyn Sproles as a result of the negligence of defendant David Reed Greene, who is insured by defendant Integon. We conclude that the Court of Appeals was correct in its determination that plaintiffs were not covered by Lakeview's UIM coverage. We further conclude that the Court of Appeals did err in determining that Integon is liable for additional prejudgment and postjudgment interest.

On 27 January 1984, while returning from a business trip, plaintiffs Carolyn Sproles, Rita Phillips, and James A. Phillips, who were all employed by Lakeview, were injured in a collision with defendant David Reed Greene. Greene's automobile, a 1971 Chevrolet, ran into the rear of the 1983 GMC van in which plaintiffs were riding and caused plaintiffs' van to run off the highway and turn over several times. Sproles suffered extensive injuries from the collision which led to her permanent, total disability.

At the time of the accident, Greene was insured under a liability policy issued by defendant Integon. This policy had a liability limit of $25,000 per person and $50,000 per accident. The van in which plaintiffs were riding was owned by Avery County Recapping Company, Inc., rather than by their employer Lakeview. However, Lakeview had a liability insurance policy with Aetna which provided UIM coverage of $100,000.

On 3 June 1986, plaintiff Sproles and her husband Charles Sproles filed suit against Greene, among others, alleging that he was responsible for the accident and claiming damages for Ms. Sproles' injuries and damages for loss of consortium on behalf of Mr. Sproles. Judgment was entered on behalf of the Sproles against Greene in the amount of $750,000 for Ms. Sproles and $200,000 for Mr. Sproles. On 20 January, both Rita and James Phillips filed suit against Greene and others claiming damages for the injuries they had sustained in the accident. At the time of this appeal no judgment had been entered against defendant Greene on behalf of the Phillips.

On 26 January 1987, the Sproles filed a declaratory judgment action against, among others, defendant Aetna requesting adjudication of whether Ms. Sproles was covered by the UIM policy Aetna had issued to Ms. Sproles' employer Lakeview. All parties moved for summary judgment.

On 30 July 1987, Integon paid into the Clerk of Court the $25,000 it was liable for under the terms of Greene's policy and also paid $2,312.36 in interest. On 26 October 1987, the Sproles filed an action against Integon, Greene's insurer, claiming interest on the full amount of the judgment against Greene from the date the suit was filed until payment was tendered. Integon denied liability for interest on the entire amount, and the Sproles moved for summary judgment.

The actions filed by the Sproles and the Phillips were consolidated for a hearing. On 16 February 1988, Judge Lamm entered a judgment which, among other things, dismissed the Sproles' and the Phillips' claims against Aetna for UIM coverage under Lakeview's policy. The trial judge further determined that Integon was not obligated to pay prejudgment and postjudgment interest on the full amount of the Sproles' judgment against Greene or the full amount of any judgment that the Phillips might obtain against Greene. He therefore dismissed the Sproles' claims against Integon for prejudgment and postjudgment interest on the entire $750,000 judgment finding that Integon owed the Sproles nothing more.

The Sproles appealed the dismissal of their claims against Aetna and Integon to the Court of Appeals. The Phillips appealed the dismissal as to Aetna. The Court of Appeals affirmed the trial court's order dismissing the claims against Aetna but concluded that the trial court erred in its determination that Integon was not liable for prejudgment and postjudgment interest on the entire $750,000 judgment entered against Greene, Integon's insured. *Sproles v. Greene*, 100 N.C. App. 96, 394 S.E.2d 691 (1990). Integon and the Sproles and the Phillips filed petitions for discretionary review with this Court, and these petitions were granted on 10 January 1991.

[1] We will address plaintiffs' appeal first and then address defendant Integon's appeal. Plaintiffs' appeal raises the threshold issue of whether employees of a corporation are included as named insureds when only the corporation is listed as the named insured on the automobile liability insurance policy. Plaintiffs contend that Lakeview's UIM coverage under a policy issued by defendant Aetna should cover Ms. Sproles and the Phillips as if they were named insureds because they were employees of Lakeview and were on a business trip when injured. According to plaintiffs, when the corporation is the named insured, the employees of the corporation should be treated as named insureds or as "family" of the named insured for the purposes of UIM coverage in part because a corporation cannot sustain bodily injury. Plaintiffs point out that the purpose of UIM coverage is to protect people who sustain bodily injuries from underinsured drivers and since the corporate entity is the named insured, if its employees are not also provided UIM coverage afforded to named insureds under the terms of the policy, the policy would essentially not provide any UIM coverage since the corporation cannot sustain bodily injury. To answer this issue, we

must turn first to the language of the policy itself and then to the statutory language of N.C.G.S. § 20-279.21(b)(3).

As noted earlier, Lakeview had a liability policy of automobile insurance with Aetna. The policy is labeled as a "Business Auto Policy," and the named insured is "Lakeview Nursery & Garden Center, Inc." Under "Part I — Words and Phrases with Special Meaning," the terms "you" and "your" are defined to be "the person or organization shown as the named insured in ITEM ONE of the declarations." Thus, where the word "you" is found in the policy, it refers to Lakeview, and Lakeview, a corporation, is the only named insured in the policy.

For the purposes of UIM coverage, N.C.G.S. § 20-279.21(b)(3) provides the following definition of "persons insured":

the named insured and, while resident of the same household, the spouse of any such named insured and relatives of either, while in a motor vehicle or otherwise, and any person who uses with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies and a guest in such motor vehicle to which the policy applies or the personal representative of any of the above or any other person or persons in lawful possession of such motor vehicle.

N.C.G.S. § 20-279.21(b)(3) (1989). This section of the statute essentially

establishes two "classes" of "persons insured": (1) the named insured and, while resident of the same household, the spouse of the named insured and relatives of either and (2) any person who uses with the consent, express or implied, of the named insured, the insured vehicle, and a guest in such vehicle.

*Smith v. Nationwide Mut. Ins. Co.*, 328 N.C. 139, 143, 400 S.E.2d 44, 47 (1991) (quoting *Crowder v. N.C. Farm Bureau Mut. Ins. Co.*, 79 N.C. App. 551, 554, 340 S.E.2d 127, 129 (1986) ). Thus, according to the statute, the named insured, in this case Lakeview, and the spouse and relatives of the named insured while living in the same household with the named insured are class one insureds and are covered for purposes of UIM coverage "while in a motor vehicle or otherwise." N.C.G.S. § 20-279.21(b)(3) (1989). Class one insureds have UIM coverage even if they are not in a "covered vehicle" when injured. All other persons are class two insureds and are only covered while using "the motor vehicle to which the policy applies." *Id.*

SPROLES v. GREENE

[329 N.C. 603 (1991)]

We find no case law in North Carolina which addresses whether the employees of a corporation should also be treated as named insureds and thus class one insureds for the purposes of UIM coverage when only the corporation is listed as the named insured; however, this Court has previously concluded that a corporation is a legal entity which is distinct from its shareholders. *Troy Lumber Co. v. Hunt*, 251 N.C. 624, 112 S.E.2d 132 (1960). Likewise, a corporation is an entity which is separate from its employees. Since a corporation is a legal entity distinct from its employees and thus cannot have a "spouse or other relatives," and since Lakeview the corporation is the named insured in the Aetna policy, we conclude that the plaintiffs as employees of the corporation Lakeview are not named insureds by the terms of the Aetna policy and therefore are not class one insureds under the statute for the purposes of UIM coverage.

When the Minnesota Supreme Court was presented with the same argument plaintiffs present in the present case, that court concluded that the fact that the corporate entity could not sustain bodily injury does not mean that the entire UIM portion of the policy was a nullity because the UIM coverage did protect persons who were occupying an insured highway vehicle. *Kaysen v. Federal Ins. Co.*, 268 N.W.2d 920, 924 (Minn. 1978). The court further concluded that the policy terms listing the corporation as the named insured were not ambiguous and did not include corporate officers and their spouses. *Id.* Since the terms of the policy were not ambiguous, the court refused to rewrite them to include the corporate officer and his wife as named insureds so that they would be covered while pedestrians and not in a vehicle covered by the policy. *Id.* Likewise, in the present case, the terms of the policy as to who are named insureds are not ambiguous. Although under the terms of the policy the corporation is the only named insured and thus the only class one insured and therefore the class one insured under the policy cannot sustain bodily injury, the UIM coverage of the policy does have effect because it provides protection to employees of the corporation who would receive coverage as class two insureds when they are using a vehicle which is covered under the terms of the policy. Therefore, the fact that the corporation is the named insured and the only class one insured under the terms of the UIM portion of the policy does not mean that the terms of the policy should be judicially interpreted to mandate that employees of the corporation should be treated as class one

insureds. We note that if we were to hold that employees of the corporation are named insureds, then the spouses and relatives of such employees, if living in the same household, would also become class one insureds and therefore covered for UIM purposes even where the insured vehicle is not involved in the insured's injuries.

[2] Since plaintiffs in the present case are not class one insureds and since they were using the van with the consent of the named insured, Lakeview, plaintiffs are classified as class two insureds under the statute. Thus, in order to have UIM coverage under Lakeview's policy with Aetna, plaintiffs would have to be injured while "in a motor vehicle to which the policy applies." N.C.G.S. § 20-179.21(b)(3) (1989). Under Item Two, which is entitled "Schedule of Coverage and Covered Autos," the Aetna policy provides UIM coverage. However, under the category of "Covered Autos," we find the number "2" and are referred to Item Three for a description of the types of automobiles covered under the UIM coverage of Lakeview's policy. Number "2" provides that the covered automobile is "Owned Autos Only" with the following explanation: "Only those autos you own . . . . This includes those autos whose ownership you acquire after the policy begins." Thus, the only automobiles covered under the UIM coverage in Lakeview's policy with Aetna are those automobiles owned by the named insured which in this case is the corporation Lakeview. When plaintiffs were injured, they were riding in a van which was owned by Avery County Recapping Company, Inc., and not by their employer Lakeview. Since plaintiffs are class two insureds and since class two insureds are only afforded UIM coverage under the terms of the policy when they are injured while occupying a "vehicle to which the policy applies," we conclude that the Court of Appeals was correct in affirming the trial court's determination that plaintiffs are not covered by Lakeview's UIM coverage under its Aetna policy.

[3] We now address defendant Integon's appeal concerning its liability for the payment of prejudgment and postjudgment interest on the full amount of the judgment against its insured, Greene. We first consider the issue of prejudgment interest. The Court of Appeals rejected the trial court's conclusion that Integon was not obligated to pay prejudgment interest on that portion of the $750,000 judgment against Greene which exceeded Integon's limit of liability under the policy. Under the policy, Greene had $25,000

in liability coverage, and Integon further agreed in the policy that, in addition to the $25,000 limit of liability, it would pay "all defense costs we incur." Integon contends that the Court of Appeals erred in its conclusion that prejudgment interest is a "defense cost within the meaning of the Integon policy." We agree.

Citing to *Lowe v. Tarble*, 313 N.C. 460, 329 S.E.2d 648 (1985), the Court of Appeals concluded that "[p]rejudgment interest, provided for by G.S. 24-5, is a 'cost' within the meaning of an insurance contract." *Sproles v. Greene*, 100 N.C. App. at 103, 394 S.E.2d at 691. However, this holding in *Lowe* is not applicable to the present case. In *Lowe*, after determining that N.C.G.S. § 24-5 does not violate due process as provided under the fourteenth amendment, this Court examined the relevant language of the policy in question in that case. *Lowe v. Tarble*, 313 N.C. at 461-63, 329 S.E.2d at 651. The policy at issue in *Lowe* provided that the insurance company would

> [p]ay all expenses incurred by the company, *all costs* taxed against the insured in any such suit and all interest accruing after entry of judgment until the company has paid, tendered or deposited in court such part of such judgment as does not exceed the limit of the company's liability thereon;

*Id.* (emphasis in the original). This Court concluded that "all costs" included prejudgment interest. *Id.* at 464, 329 S.E.2d at 651.

In the present case, the language of the Integon policy is different from the language of the policy in *Lowe*. Integon's policy provides that, in addition to the policy limits, "we will pay all *defense costs* we incur." (Emphasis added.) The promise to pay "all defense costs" in the Integon policy is quite different from the promise to pay "all costs taxed against the insured" as found in the policy under consideration in *Lowe*. *Lowe* clearly decided that "all costs taxed against the insured" as used in the policy included prejudgment interest because that is a cost taxed against the insured. However, the phrase "all defense costs we incur" is not as broad. "Defense costs" refer to costs associated with the process of defending a claim such as attorney fees, deposition expenses, and court costs including such items as subpoena and witness fees. *See* Annot. "Allocation of Defense Costs Between Primary and Excess Insurance Carriers," 19 A.L.R.4th 107 (1983). Thus, under the language of the policy in the present case, Integon has agreed to pay, in excess of its liability limits, only the costs of

defense and not all costs taxed against the insured, and *Lowe* is not controlling. Furthermore, we find no other provision in the Integon policy in which it agrees to pay prejudgment interest in addition to its limit of liability; nor do we find any statutory provision requiring a liability insurance carrier to pay prejudgment interest in addition to its limit of liability under the policy. Therefore, we conclude that the Court of Appeals erred in its conclusion that Integon was required to pay Ms. Sproles prejudgment interest on the entire amount of the judgment.

**[4]** Integon next contends that the Court of Appeals erred in concluding that Integon owed postjudgment interest on Ms. Sproles' $750,000 judgment and in concluding that Integon's oral offer to pay its policy limit did not toll Integon's liability for postjudgment interest. On the day the jury verdict was returned, Integon orally offered in open court to pay its policy limit and costs to the plaintiff; however, Integon did not pay this amount into the court until thirteen days later. Integon claims that under the language of its policy, it must only pay postjudgment interest on $25,000, its limit of liability under the policy, from the time of judgment until Integon offered to pay the $25,000 on the day the verdict was returned. Thus, in this case, Integon would owe no postjudgment interest since it offered to pay the full amount of its liability on the day the verdict was returned.

The supplementary payments provision of the Integon policy in question provides:

> In addition to our limit of liability, we will pay on behalf of a covered person:
>
> . . . .
>
> (3) Interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for this coverage.

The relevant statute governing the accrual of prejudgment and postjudgment interest provides in part:

> In an action other than contract, the portion of money judgment designated by the fact finder as compensatory damages bears interest from the date the action is instituted until the judgment is satisfied.

N.C.G.S. § 24-5 (Cum. Supp. 1990).

The Court of Appeals concluded that the provision in the Integon policy governing the payment of postjudgment interest "conflicts with G.S. § 24-5 and is therefore without effect." *Sproles v. Greene*, 100 N.C. App. at 104, 394 S.E.2d at 691. The Court of Appeals further concluded that this action must be remanded and that "the costs against Greene must be retaxed to include interest on Mrs. Sproles' judgment until the date its policy limits were paid into court." *Id.* at 105, 394 S.E.2d at 691.[1]

Integon contends that the Court of Appeals erred in concluding that the limitations as to the conditions under which Integon would pay interest are not enforceable because the limitations conflict with N.C.G.S. § 24-5. We agree. As authority for its conclusion, the Court of Appeals cited *Nationwide Mutual Insurance Co. v. Chantos*, 293 N.C. 431, 238 S.E.2d 597 (1977). In *Chantos* this Court concluded, "[t]he provisions of the Financial Responsibility Act are 'written' into every automobile liability policy as a matter of law, and, when the terms of the policy conflict with the statute, the provisions of the statute will prevail." *Id.* at 441, 238 S.E.2d at 604 (citations omitted). However, as Integon points out, § 24-5 is not a part of the Financial Responsibility Act. Therefore, *Chantos* does not provide authority for the proposition that § 24-5 must be written into every automobile liability insurance policy, and we find no authority for this proposition. Furthermore, we find no provision in the Financial Responsibility Act requiring a liability insurer to pay postjudgment interest on amounts in excess of its policy limits even though such interest may properly be taxed against the insured. When coverage provided in the policy is in addition to the mandatory statutory requirements, the additional coverage is not subject to the statutory provisions in the Financial Responsibility Act. N.C.G.S. § 20-279.21(g) (1989). Thus, the additional coverage is governed by the terms of the policy, and we must look to the language of the policy to see whether Integon is obligated to pay postjudgment interest taxed against its insured.

[5] As indicated above, the language of the policy provides for payment of postjudgment interest from the time judgment is entered until the time the insurance company "offers to pay" the part of the judgment which does not exceed its limit of liability. Thus,

---

1. We note that the question before the Court is not what costs must be taxed against the defendant Greene but what costs must be paid by the insurer Integon in addition to the policy limits.

we must determine what is meant by the term "offer to pay" as it is used in context in this supplementary payments provision of a liability insurance policy. We find no cases in North Carolina which have addressed this specific issue. However, in *Farmers Alliance Mut. Ins. Co. v. Bethel*, 812 F.2d 412 (8th Cir. 1987) (per curiam), the court considered a provision in a policy of liability insurance which is identical to the provision in the present case. In *Bethel*, the insurer had made several offers to pay its policy limits before judgment and did not make a postjudgment offer to pay until five weeks after the judgment. *Id.* at 413. The court stated, "Well before it was involuntarily required to defend its insured . . . appellee made a standing offer to pay the full policy limits. Its offers were refused through no fault of the insurer." *Id.* The court held that the insurer's "many good faith offers to pay the full policy limits satisfied the supplementary payments provision and precluded any obligation for postjudgment interest." *Id.*

In *Insurance Co. of Pennsylvania v. Giles*, 196 Ga. App. 271, 395 S.E.2d 833 (1990), the Georgia Court of Appeals was faced with the application of an identical provision. Agreeing "with the reasoning and the result reached by the court" in *Bethel*, the *Giles* court concluded that the insurer's offer to pay the entire limits before judgment was effective to toll its liability for postjudgment interest. The Georgia court noted that the purpose of this "supplementary payments" provision in the policy "is to assure that [the injured party] will quickly receive the primary amount the insurer is obligated to pay under the policy after judgment. It does this by making it expensive for the insurer to delay." *Id.* at 273, 395 S.E.2d at 835. In *Giles*, as in *Bethel*, the insurer offered to pay the limit of its liability prior to the judgment, and the court concluded therefore that the "delay-preventing benefit provided for in the policy's supplementary payments section is inapplicable." *Id.* at 274, 395 S.E.2d at 836.

In the present case, the record shows that Integon, prior to judgment, made an offer to pay its policy limits conditioned on plaintiffs' release of Greene, and Integon's attorney, who was representing defendant Greene, made an unconditional offer at the end of the trial to pay the full amount of Integon's liability under its policy with Greene. We conclude that Integon's "offer to pay" made on the same day that the verdict was returned was sufficient, under the terms of Integon's policy with Greene, to toll Integon's responsibility for postjudgment interest even though the actual

GRANVILLE CO. BD. OF COMRS. v. N.C. HAZ. WASTE MGMT. COMM.

[329 N.C. 615 (1991)]·

payment was not ·made until thirteen days later. Thus, the Court of Appeals erred in determining that Integon must pay postjudgment interest on the $750,000 judgment.

For the reasons stated above, we affirm the Court of Appeals as to the action involving Aetna and reverse the Court of Appeals as to the action involving Integon. We remand that portion of the action relating to the award of prejudgment and postjudgment interest to the Court of Appeals for remand to the trial court for further proceedings not inconsistent with this opinion on the issue of prejudgment and postjudgment interest.

Affirmed in part; reversed in part; and remanded in part.

Justice MARTIN did not participate in the consideration or decision of this case.