**Rosaly Jean SHEPPARD,**
**Plaintiff–Appellant,**

v.

**ALLSTATE INSURANCE COMPANY,**
**Defendant–Appellee.**

No. 92–2228.

United States Court of Appeals,
Tenth Circuit.

April 11, 1994.

Paul S. Wainwright, Albuquerque, NM, for plaintiff-appellant.

Gordon J. McCulloch (Lisa M. Tourek with him on the brief), Bradley & McCulloch, Albuquerque, NM, for defendant-appellee.

Before LOGAN and MOORE, Circuit Judges, and BROWN, Senior District Judge.*

WESLEY E. BROWN, Senior District Judge.

In this action, plaintiff sued to recover underinsured motorist benefits under a policy issued by the defendant Allstate Insurance Company. The district court entered an order granting defendant's motion for summary judgment on all of plaintiff's claims, which were then dismissed with prejudice. Plaintiff claims in this appeal that the district court erred in ordering summary judgment since disputed factual issues preclude such an order, and that the district court erred in failing to apply the law of New Mexico in interpreting policy benefits.

A motion for summary judgment is to be granted only when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Following our review of the record, we find that judgment was properly entered in favor of defendant and the order and judgment of the district court will be affirmed.

The undisputed facts appearing of record in this case establish that on April 16, 1985, Allstate Insurance Company received an application for auto insurance from its agent, Carl McIntosh of Ashville, North Carolina. The application listed the applicant as Skyway Aviation, Inc., a North Carolina corporation. The plaintiff, Rosaly Sheppard, was the president of Skyway Aviation, and Carl McIntosh was the vice-president. Sheppard and McIntosh were the sole shareholders in Skyway aviation. As noted, McIntosh was also a general agent for Allstate and sold both commercial and individual automobile insurance.

The application for insurance which listed McIntosh as the authorized driver, was signed by McIntosh as vice-president of Skyway, and Sheppard's name does not appear anywhere on the application.[1] This application listed the address for Skyway as 201 Clyde Savings Building, Ashville, North Carolina, the same address as that of McIntosh's Allstate office.

It appears that Allstate issued a "personal lines" policy to Skyway, rather than a commercial policy. The policy was sent to Skyway, and McIntosh delivered it to plaintiff. As issued, the uninsured/underinsured provisions of the policy define the insured as:

1. You or any family member.

2. Any other person occupying:

   a) your covered auto; or

---

* The Honorable Wesley E. Brown, Senior District Judge, District of Kansas, sitting by designation.

1. In his deposition, McIntosh testified that he later called in plaintiff's name and driver's license number as an additional driver under the policy, but as noted, *infra,* plaintiff's name does not appear as an insured under the policy as issued.

b) any other auto operated by you.

The policy defines "you" and "your" as:

1. The "named insured" as shown in the Declarations; and

2. The spouse if a resident of the same household.

The "named insured" on the declaration page of the policy was Skyway Aviation, Inc. Plaintiff Rosaly Sheppard is not mentioned anywhere on the declaration page.

On June 7, 1986, and while the policy was in effect, plaintiff was struck by an underinsured motorist as she was crossing a street as a pedestrian in Ruidoso, New Mexico. At that time, plaintiff was the president of Skyway Aviation, Inc., a North Carolina corporation, but her presence in New Mexico was to pursue personal interests, and she was not occupying or operating any of the four vehicles that were covered under the policy issued to Skyway.[2]

Following the accident, McIntosh submitted a claim to Allstate on plaintiff's behalf for benefits under the medical payments portion of the policy. By mistake, Allstate paid $5,000 to Sheppard under the policy's medical pay benefits provisions. Approximately two years later, plaintiff submitted a claim to Allstate under the underinsured motorist portion of the policy, but the claim was denied.

■ Under conflict of laws rules in the State of New Mexico, an insurance contract is to be interpreted under the law of the place where the contract was consummated. See *Pound v. Insurance Company of North America*, 439 F.2d 1059 (10th Cir.1971) (applying New York law), and *State Farm Mut. Ins. Co. v. Conyers*, 109 N.M. 243, 784 P.2d 986 (1989), where contract written in New Mexico for insureds later residing in Nevada and accident happened in Nevada, the court ruled that New Mexico law would apply in determining benefits under the policy.[3]

■ Under North Carolina law, when an insurance policy is not ambiguous, a court will construe the policy strictly without resort to extrinsic evidence. *Metric Constructors, Inc. v. Industrial Risk Insurers*, 102 N.C.App. 59, 401 S.E.2d 126, 128, *aff'd.* 330 N.C. 439, 410 S.E.2d 392 (1991). In the trial court, and in this court, plaintiff points to evidence tending to show that plaintiff was an intended insured, or was considered to be a named insured. The trial court noted that in this respect she relied primarily on McIntosh's testimony that after he sent in the application, he called in driver information on plaintiff, so as to include her as a listed driver. Even if this was the case, the fact remains that the policy as issued and returned to McIntosh only listed Skyway as the named insured, and there was absolutely no ambiguity in the policy itself. While plaintiff contends that the policy as issued did not conform to representations made by McIntosh and the expectations of plaintiff, such expectations "would establish no ambiguity; they would directly contradict the written policy. Under long establish precedent, this may not be done." *Cavin's Inc. v. Atlantic Mutual Insurance Company*, 27 N.C.App. 698, 220 S.E.2d 403, 407 (1975).

In *Cavin's*, the insured and his insurer settled a malicious prosecution suit for $8,000 which included a punitive damage amount of $4,500. In a suit to recover the punitive portion of the settlement, the insured claimed that even if the insurer did not intend to provide coverage for punitive damages, the language used in the policy was ambiguous. The North Carolina court found no ambiguity and refused to rewrite the policy to conform to the insured's understanding of its provisions.[4] The court likewise rejected the insured's contention that the insurer's agent had expressly represented that the policy would cover punitive damages, stating that "the written policy, while it remains

---

**2.** The record reflects that plaintiff had her own personal automobile insurance with U.S.F. & G, which provided for underinsured motorist benefits, and that she collected $500,000 under this policy as a consequence of the Ruidoso accident.

**3.** In August, 1982 and June, 1984, plaintiffs purchased insurance in New Mexico, giving a local

mailing address and New Mexico driver's license numbers. From January, 1983 to December, 1984, plaintiffs lived in California and after that, in Nevada.

**4.** The policy provided coverage only for damages arising from personal injuries.

unaltered, will constitute the contract between the parties, and all prior parol agreements will be merged in the written instrument; nor will evidence be received of prior parol inducements and assurances to contradict or vary the written policy while it so stands as embodying the contract between the parties." 220 S.E.2d at 407.

Under North Carolina law, McIntosh and plaintiff were required to examine and read the policy as issued and, if it did not conform to their expectations, it was their duty to refuse the written contract. As noted by the trial court, even though an agent made contrary representations, or the plaintiff believed the policy to be other than as written, an unambiguous contract will not be later converted to contain such representations or beliefs. In *Metric Constructors, Inc. v. Industrial Risk Insurers, supra,* 102 N.C.App. 59, 401 S.E.2d 126 (1991) *affirmed* 330 N.C. 439, 410 S.E.2d 392, which involved a "builder's risk" policy of insurance, plaintiff, a subcontractor, who was not named as an additional insured under the policy, claimed that the failure to list it as an insured was an oversight, and that the parties intended the plaintiff to be covered by the policy. In denying coverage and enforcing the policy as written, the North Carolina court stated:

> "The plaintiff refers this Court to extrinsic evidence to support its position on intent, not to the language of the policy. However, the plaintiff does not argue that the policy is ambiguous as to the identity of the insured or of any beneficiary. Indeed the policy is not ambiguous on who the insured is or on who is entitled to proceeds under it. The policy defines who is an insured under the policy, and the plaintiff is not included in the list... Because the policy is not ambiguous, this Court must strictly construe the policy without resort to extrinsic evidence. Accordingly, we conclude from the insurance policy that the plaintiff has not shown itself to be an insured or a beneficiary under the language of the policy. Any other construc-

tion would amount to an impermissible judicial revision of the insurance policy." 401 S.E.2d at p. 128 [5]

Plaintiff contends that even if her coverage under the Allstate policy cannot be construed as a "personal policy," she nevertheless is entitled to coverage under New Mexico insurance law as applied in *Horne v. U.S. Fidelity & Guar. Co.,* 109 N.M. 786, 791 P.2d 61 (1990). In *Horne,* the New Mexico court found that an employee otherwise insured under a business policy uninsured motorist rider was entitled to stack benefits on covered vehicles due to ambiguity in the definition of "class-one" insureds under the policy, defined as "you or any family member." It should be noted that the employee was driving an insured vehicle on company business at the time of the accident.

The New Mexico approach found in *Horne* is directly contrary to the law of North Carolina which is determinative of the issue. In *Sproles v. Greene,* 329 N.C. 603, 407 S.E.2d 497 (1991), the North Carolina Supreme Court resolved the issue of whether employees of a corporation are included as named insureds when only the corporation is listed as the named insured on the policy. There, the plaintiffs were involved in an automobile collision while on a business trip riding in a van that was not owned by their employer, the named insured. These plaintiffs contended that as employees of the company, they should be treated as "family" of the named insured for purposes of coverage because a corporation cannot itself sustain bodily injury. The North Carolina court found that the policy was not ambiguous, stating that:

> Although under the terms of the policy the corporation is the only named insured and thus the only class one insured and therefore the class one insured under the policy cannot sustain bodily injury, the UIM coverage of the policy does have effect because it provides protection to employees of the corporation who would receive cov-

---

5. This ruling was made although the evidence indicated that the general contractor was named as an additional insured, the broker testified that by implication, the policy covered sub-contractors, that the cost of the policy was the same whether a sub-contractor was listed or not, and that the insurer had at one time agreed to pay the claim upon submission of appropriate proof. See dissent, 401 S.E.2d at 129.

erage as class two insureds when they are using a vehicle which is covered under the terms of the policy. Therefore, the fact that the corporation is the named insured and the only class one insured ... does not mean that the terms of the policy should be judicially interpreted to mandate that employees of the corporation should be treated as class one insureds. We note that if we were to hold that employees of the corporation are named insureds, then the spouses and relatives of such employees, if living in the same household, would also become class one insureds and therefore covered for UIM purposes, even where the insured vehicle is not involved in the insured's injuries. (407 S.E.2d at 501).

Since the plaintiffs in *Sproles* were "class two" insureds, covered under the policy only when occupying a vehicle owned by the insured, they were not covered under the terms of the policy.

In *Busby v. Simmons*, 103 N.C.App. 592, 406 S.E.2d 628 (1991), a majority stockholder in a corporation was injured in an automobile accident while she was riding her bicycle. She sought uninsured motorist benefits under a policy issued to Capital Physical Therapy, Inc., a company in which she owned two-thirds of the stock. Capital owned two automobiles, one of which was provided to plaintiff for her exclusive personal and business use. It appears that the agent had advised that plaintiff would have all of the benefits under the policy, including uninsured motorist coverage, but Capital was the sole named insured on the declaration page although plaintiff's name appeared as a named driver and a person insured for coverage. The policy as issued defined "insured" as "You or any family member" and "Any other person occupying ... your covered auto; or any other auto operated by you." The term "you" was defined as "the named insured in the Declarations." The North Carolina court found no merit to plaintiff's claim that she was essentially identical to the corporation, and thus entitled to coverage:

> Plaintiff cites no case (and we find no case) which expands the term "named insured" to include officers, directors, or stockholders of a corporation when the named insured is the corporation. *"Named insured" has a common sense and explicit meaning. It is the named individual (or corporation) on the declarations page of the policy....* Here, it is Capital Physical Therapy, Inc. 103 N.C.App. at 596, 406 S.E.2d 628. (Emphasis supplied)

In addition, the court noted that plaintiff was not operating a covered vehicle and was not entitled to benefits under the alternative section of the policy.

Under North Carolina law, as exemplified in *Busby* and *Sproles*, plaintiff here is not entitled to coverage under the Allstate policy. She was not engaged in any activity on behalf of her corporation at the time of the accident, and she was not driving or occupying an insured corporate vehicle. The policy language contained in the Allstate policy is identical to that contained in the policy involved in *Busby*. Plaintiff's claim is even weaker than that of the majority shareholder in *Busby*, who was listed as an additional driver. Plaintiff Sheppard is not listed in any manner on the policy issued to Skyway and, therefore, is not an insured within the meaning of the policy.

Plaintiff contends that Allstate's agent, McIntosh, requested coverage for her personally, and that his statements and intent should be binding upon Allstate. Any such evidence is irrelevant once a policy has been issued and accepted as was the case here. Extrinsic evidence will not be used to interpret a policy which is not ambiguous. *Metric Constructors, Inc. v. Industrial Risk Insurers, supra,* 401 S.E.2d 126; *Cavin's Inc. v. Atlantic Mut. Ins. Co., supra,* 220 S.E.2d 403.

■ Plaintiff contends that Allstate's payment of benefits under the medical payments provisions of the policy estops Allstate from denying coverage. Allstate admittedly made a payment of $5,000, but defendant's agents all testified that they were under a mistaken belief that Mrs. Sheppard was entitled to this payment. Payment of medical benefits in this case does not bar Allstate from denying coverage for underinsured motorist benefits when such payment was due to oversight or mistake. A similar situation occurred in *Agee v. Travelers Indemnity Company*, 396

F.2d 57 (10th Cir.1968) where defendant's agent mistakenly authorized a $500 medical benefit payment without reviewing the file. In finding that under Oklahoma law the insurer was not estopped to deny coverage, this court stated:

> The elements of equitable estoppel under Oklahoma law are set out in *Antrim Lumber Co. v. Wagner*, 175 Okl. 564, 54 P.2d 173, 176. They include knowledge and detrimental reliance. In *St. Louis & S.F.R. Co. v. Mann*, 79 Okl. 160, 192 P. 231, 233, it was said that estoppel cannot be set up against a party "whose conduct was based upon pure mistake." Here the record shows, and the court found, that the medical payment was made by mistake. The evidence shows no reliance by Bennie on the payment which might have been a detriment to him. The district court correctly found no detrimental reliance and correctly concluded that under Oklahoma law no estoppel arose. (396 F.2d at 60).

Under North Carolina law, estoppel "always involves a prejudicial misleading." *Lenoir Memorial Hospital v. Stancil*, 263 N.C. 630, 139 S.E.2d 901 (1965). In *Stancil*, the insurer issued a check payable jointly to the insured and to the hospital, but the drawee bank paid the check with the sole endorsement of the insured and that party failed to pay the hospital. The hospital then sued the insurer to recover for services rendered to the insured. Under the terms of the policy, the insurance company could have made the draft payable only to the insured in discharge of its obligation under the policy. The court found there was no estoppel for the insurer did not induce the hospital "to alter its position by any misleading act or promise." In so ruling, the court stated that:

> Though often used interchangeably with reference to insurance contracts, the terms waiver and estoppel are not synonymous. Waiver is the intentional surrender of a known right or privilege, which surrender modifies other existing rights or privileges or varies the terms of a contract. It does not necessarily imply that the one against

whom it is sought to be invoked has misled the other to his prejudice, whereas estoppel always involves a prejudicial misleading. (139 S.E.2d 901 at 903).

See also *Carter v. Frank Shelton, Inc.*, 62 N.C.App. 378, 303 S.E.2d 184 (1983) where the plaintiff claimed that the insurer was estopped to deny coverage because it accepted premiums and was silent when he made requests for coverage to its agent. In finding that the company was not liable on any theory of estoppel, the North Carolina Court of Appeals defined the nature of equitable estoppel in this manner: (303 S.E.2d at 189)

> Equitable estoppel arises "when an individual by his acts, representations, admissions, or by his silence when he has a duty to speak, intentionally or through culpable negligence induces another to believe that certain facts exist, and such other person rightfully relies and acts upon that belief to his detriment." (quoting *Thompson v. Soles*, 263 S.E.2d 599, 602 (1980)).

Here, plaintiff Sheppard has offered no evidence of detrimental reliance because of the one-time payment of medical benefits and, indeed, the court notes that her Fifth Amended Complaint does not even state a claim for estoppel. The issue of coverage for underinsured motorist benefits must be determined solely by reference to the terms of the insurance policy issued to Skyway, and the mistaken payment of medical benefits cannot be relied upon to establish coverage when no such coverage existed under that policy.

Plaintiff contends that summary judgment was not appropriate in this case because her discovery requests were not honored, but there was no showing that any withheld materials would be relevant to our decision.[6] The sole issue for review by this court is whether the district judge correctly found that the policy in question was not ambiguous, and that North Carolina law, as set out in *Sproles v. Greene*, and *Busby v. Simmons*, *supra*, prohibit recovery in this case. Upon the record before us, we find that summary

---

6. It appears that the United States Magistrate denied plaintiff's motion to compel discovery, in part because she failed to comply with local court rules. Plaintiff did not ask for reconsideration of this order.

judgment was properly entered, and that judgment is

AFFIRMED.