**GRAIN DEALERS MUTUAL
INSURANCE COMPANY,
Petitioner,**

v.

**Gerald Wayne McKEE and wife, Diana
Michelle McKee, individually and a/n/f
of Kelly McKee, a minor, Respondents.**

No. 96–0022.

Supreme Court of Texas.

Argued on Dec. 18, 1996.

Decided April 18, 1997.

Edward C. Mainz, Jr., San Antonio, for Petitioner.

Malcolm C. Halbardier, Corpus Christi, for Respondents.

ABBOTT, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, GONZALEZ, HECHT, CORNYN, JUSTICE ENOCH, OWEN and BAKER, Justices, join.

In this case we must determine whether the Business Auto Policy that Grain Dealers Mutual Insurance Company ("Grain Dealers") issued to Future Investments, Inc.

("Future Investments"), a corporation of which Gerald McKee is the president and sole shareholder,[1] provides coverage for McKee's daughter. We conclude that it does not. Accordingly, we reverse the judgment of the court of appeals and render judgment for Grain Dealers.

McKee's eleven-year-old daughter, Kelly, was injured in a one-car accident while riding as a passenger in a car driven by her adult step-sister, Delane Aranda. Delane's husband owned the car. The accident occurred during the effective period of the insurance policy issued to McKee by Grain Dealers. The parties stipulated that neither Delane nor the car involved in the accident was covered under the Grain Dealers policy and that the accident occurred during an outing unrelated to any business purpose of Future Investments. Kelly resided with McKee when the accident occurred; Delane did not.

McKee sued (1) his Texas Personal Auto Policy insurance carrier, Companion Insurance Company, for Uninsured/Underinsured Motorist Protection ("UM/UIM") coverage; (2) Delane; and (3) Grain Dealers. McKee settled with Companion and Delane for a total of $320,000.00.

By counter-motions for summary judgment, McKee and Grain Dealers sought a declaratory judgment on the coverage issue. The trial court granted summary judgment in favor of McKee, finding that Kelly was entitled to coverage under the policy's UM/UIM and Personal Injury Protection ("PIP") provisions. The court of appeals affirmed, concluding that the policy was ambiguous and that the ambiguity should be resolved in favor of the insured. 911 S.W.2d 775, 779–81. We must determine the scope of coverage the UM/UIM and PIP endorsements provide and whether the endorsements are ambiguous such that a reasonable interpretation of the policy provides Kelly coverage.

■ The UM/UIM endorsement provides three categories of "who is an insured" under the policy:

---

1. Grain Dealers disputes whether there is competent summary judgment evidence supporting McKee's contention that he is the sole shareholder of Future Investments. For purposes of this opinion, we assume that McKee is Future Investments' sole shareholder.

1. You and any **designated person** and any **family member** of either.
2. Any other person **occupying a covered auto.**
3. Any person or organization for damages that person or organization is entitled to recover because of **bodily injury** sustained by a person described in 1. or 2. above.

The PIP endorsement provides two categories of "who is an insured":

1. You or any **family member** while **occupying** or when struck by any **auto.**
2. Anyone else **occupying a covered auto** with your permission.

The insurance policies and the summary judgment evidence demonstrate that the Grain Dealers policy excludes coverage for Kelly. In order for the policy to cover Kelly, she must fall within one of the categories of "who is an insured." The Business Auto Coverage Form of the Grain Dealers policy provides: "Throughout this policy the words 'you' and 'your' refer to the Named Insured in the Declarations page." The declarations page of the Grain Dealers policy provides that Future Investments is the "named insured." Future Investments is also the "named insured" in the UM/UIM and PIP endorsements. The UM/UIM endorsement defines "designated person" as "an individual named in the schedule. By such designation, that person has the same coverage as you." Future Investments did not name a "designated person" in the space provided in the UM/UIM endorsement and did not list additional autos to be covered under either endorsement. The names of Gerald McKee and Kelly McKee do not appear anywhere in the policy or the endorsements. As a result, Kelly does not qualify as "you" or "designated person" under the endorsements.

Additionally, Kelly does not qualify as a "family member" under the endorsements. "Family member" is defined in both endorsements as "a person related to you [Future Investments] by blood, marriage, or adoption who is a resident of your [Future Investments] household, including a ward or foster child." Kelly is obviously not related to Future Investments by blood, marriage, or adoption. Of course, she also does not reside in Future Investments' household. A corporation simply cannot have a "family" as that term is defined in the policy. *See Webster v. U.S. Fire Ins. Co.,* 882 S.W.2d 569, 572 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (citing *Sproles v. Greene,* 329 N.C. 603, 407 S.E.2d 497, 500 (1991)).

Because Kelly does not qualify as a "designated person," a "family member," or "you," she does not fall within the first classification of who is an insured under the UM/UIM and PIP endorsements. The parties agree that Kelly was not occupying a covered auto when the accident occurred. As a result, Kelly does not fall within category 2 of either the UM/UIM or PIP endorsements. In order to recover under category 3 of the UM/UIM endorsement, Kelly would have to be a person described in categories 1 or 2. Because she is not, it is clear that Kelly does not fall within any of the endorsement classifications of "who is an insured."

Nevertheless, McKee argues that the policy is ambiguous because the "family member" language contained in the PIP and UM/UIM endorsements, when viewed from his perspective as the president and sole shareholder of Future Investments, is susceptible to the reasonable interpretation that the endorsements provided coverage for his family members. McKee maintains that *"he is the corporation"* and, consequently, his daughter is a family member covered by the endorsement language. In finding ambiguity, the court of appeals agreed that the family-owned nature of Future Investments was a significant factor. The court of appeals explained:

When the contract is considered in the surrounding circumstances, namely, providing insurance coverage to a sole shareholder corporation, it is entirely reasonable that "[a]n endorsement that specifically added coverage for 'family members,' as did this one, would reasonably be understood as providing [underinsured] motorist insurance for members of the [McKee] family independent of whether they were occupying a covered automobile at the time of the injury."

911 S.W.2d at 781 (quoting *Ceci v. National Indem. Co.*, 225 Conn. 165, 622 A.2d 545, 549 (1993)).

■ The general rules of contract construction govern insurance policy interpretation. *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex.1995); *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex.1994). "Whether a contract is ambiguous is a question of law that must be decided by examining the contract as a whole in light of the circumstances present when the contract was entered." *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d. 587 (Tex.1996); *National Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex.1995). A contract is unambiguous as a matter of law if it can be given a definite or certain legal meaning. *Columbia Gas*, 940 S.W.2d at 589; *CBI*, 907 S.W.2d at 520. Conversely, if an insurance contract is subject to more than one reasonable interpretation, the contract is ambiguous and the interpretation that most favors coverage for the insured will be adopted. *Kelly Assocs., Ltd. v. Aetna Cas. & Sur. Co.*, 681 S.W.2d 593, 596 (Tex.1984). Therefore, we must discern whether there is more than one reasonable interpretation of the UM/UIM and PIP endorsements. In making this determination, we note that an ambiguity does not arise simply because the parties advance conflicting interpretations of the contract. *Columbia Gas*, 940 S.W.2d at 589.

■ McKee's status as president and sole shareholder of the named insured Future Investments, combined with the "family member" language in the PIP and UM/UIM, does not create an ambiguity. There is no reasonable interpretation of the policy that can construe McKee as the "you" to whom the covered family members are linked in the endorsements. McKee, unambiguously, is not the named insured under the policy, and his status as president and sole shareholder does not equate him with the insured company. Under Texas law, a corporation is an entity separate from its shareholders. *See*

*Massachusetts v. Davis*, 140 Tex. 398, 168 S.W.2d 216, 222 (1942), *cert. denied*, 320 U.S. 210, 63 S.Ct. 1447, 87 L.Ed. 1848 (1943). While under certain extraordinary circumstances the corporate fiction may be disregarded, mere control and ownership of all the stock of a corporation is not a sufficient basis for ignoring the distinction between the shareholder and the corporate entity. *See id.* at 224; *Commercial Escrow Co. v. Rockport Rebel, Inc.*, 778 S.W.2d 532, 540 (Tex. App.—Corpus Christi 1989, writ denied). Thus, McKee's sole shareholder status is immaterial because Future Investments is a distinct legal entity, separate and apart from McKee. Because Future Investments, not McKee, is the insured, Kelly, unambiguously, does not fall within the ambit of the "family member" language.

■ McKee tries to support his ambiguity claim by arguing that the "family member" language would be rendered a nullity if we do not interpret the policy to cover McKee's family members. Although interpreting an insurance policy to give a reasonable meaning to all provisions is preferable to interpreting the policy in a way that creates surplusage or leaves a portion of the policy useless or inexplicable, *Liberty Mut. Ins. Co. v. American Employers Ins. Co.*, 556 S.W.2d 242, 245 (Tex.1977), surplusage alone does not make an insurance policy ambiguous. Unlike a unique contract tailor-made to the interests peculiar to each party, the UM/UIM and PIP endorsements are standard forms crafted to accommodate a wide variety of insurance needs. Elections made by the insured may invoke or render inert various provisions of insurance policy endorsements. For example, Future Investments could have named a designated person in the UM/UIM endorsement,[2] which would have created coverage for the designee as well as the designee's family members. The corporation's failure to designate such a person rendered the policy language regarding a "designated person" and the person's "family" inapplica-

---

**2.** McKee argues that it was Grain Dealers' custom not to name a designated person in business automobile coverage policies in which a corporation is the named insured. There is no evidence, however, that McKee or Future Investments sought to name a designee or that Grain Dealers refused to allow such a designation.

ble in this instance, but does not nullify the endorsements or create an ambiguity.

■ McKee claims that any policy interpretation that denies family member status to Kelly is illusory and, consequently, "abhorrent to Texas law" because it "would constitute a forfeiture, i.e. the policy would provide coverage to no person in the Class 1 (you ... family member) portion of the UM/UIM and PIP coverages." We disagree. While the family member language provides no coverage for Kelly in this instance, the endorsements provide other types of coverage. For example, the PIP and category 2 of the UM/ UIM would have covered Kelly if she had been riding in a covered auto. Additionally, Future Investments had the opportunity to activate coverage under category 1 of the UM/UIM simply by designating a person in the endorsement. Designating either McKee or Kelly would have triggered coverage in this instance. Our interpretation of the policy does not cause a forfeiture, it merely restricts coverage to those who are insured.

Other jurisdictions have analyzed policy language similar to that in the Grain Dealers policy. A majority of jurisdictions have found that the combination of "family language" and an entity's being the "named insured" does not create an ambiguity. *See, e.g., Guarantee Ins. Co. v. Anderson,* 585 F.Supp. 408, 411 (E.D.Pa.1984); *Nicks v. Hartford Ins. Group,* 291 So.2d 673, 674 (Fla. Dist.Ct.App.1974); *Hogan v. Mayor & Aldermen of Savannah,* 171 Ga.App. 671, 320 S.E.2d 555, 557–58 (1984); *Economy Preferred Ins. Co. v. Jersey County Const., Inc.,* 246 Ill.App.3d 387, 186 Ill.Dec. 233, 236–37, 615 N.E.2d 1290, 1293–94 (1993); *Peterson v. Universal Fire & Cas. Ins. Co.,* 572 N.E.2d 1309, 1311 (Ind.Ct.App.1991); *Andrade v. Aetna Life & Cas. Co.,* 35 Mass.App.Ct. 175, 617 N.E.2d 1015, 1017 (1993); *Kaysen v. Federal Ins. Co.,* 268 N.W.2d 920, 923–24 (Minn.1978); *Cutter v. Maine Bonding & Cas. Co.,* 133 N.H. 569, 579 A.2d 804, 808 (1990); *Buckner v. Motor Vehicle Accident Indem. Corp.,* 66 N.Y.2d 211, 495 N.Y.S.2d 952, 486 N.E.2d 810, 812 (1985); *Sproles v. Greene,* 329 N.C. 603, 407 S.E.2d 497, 500 (1991); *Meyer v. American Econ. Ins. Co.,* 103 Or.App. 160, 796 P.2d 1223, 1225 (1990);

*General Ins. Co. of Am. v. Icelandic Builders, Inc.,* 24 Wash.App. 656, 604 P.2d 966, 968 (1979).

In a minority of jurisdictions, courts have concluded that similar policy endorsements do create an ambiguity. *See, e.g., Hager v. American W. Ins. Co.,* 732 F.Supp. 1072, 1075 (D.Mont.1989); *Hawkeye–Security Ins. Co. v. Lambrecht & Sons, Inc.,* 852 P.2d 1317, 1319 (Colo.Ct.App.1993); *Ceci v. National Indem. Co.,* 225 Conn. 165, 622 A.2d 545, 549–50 (1993); *King v. Nationwide Ins. Co.,* 35 Ohio St.3d 208, 519 N.E.2d 1380, 1384 (1988). We concur with the majority of jurisdictions that the family member language does not create an ambiguity.

■ We reject McKee's position that the policy provisions are ambiguous and susceptible to more than one reasonable interpretation merely because other jurisdictions have reached differing conclusions about similar policy provisions. Opinions from other states about insurance policy interpretation can be persuasive, but ambiguity is for this Court to decide.

■ Finally, McKee proposes that his daughter is covered as a matter of public policy under articles 5.06–1(1) and 5.06–3(a) of the Insurance Code. He argues that these provisions require that Texas auto liability insurance policies include UM/UIM and PIP endorsements and allow insurance companies to collect premiums for these endorsements. *See* TEX. INS.CODE arts. 5.06–1(1), 5.06–3(a). McKee contends that allowing insurance companies to provide limited coverage while at the same time collecting premium dollars on these endorsements contravenes public policy. This argument fails because, while the Insurance Code does require UM/UIM and PIP coverage to be offered, it explicitly provides that UM/UIM coverage may be limited to "persons insured [under the policy]," TEX. INS.CODE art. 5.06–1(1), and to "the named insured in the ... policy and members of the insured's household." TEX. INS. CODE art. 5.06–3(b). Because Kelly is not covered under the liability section of the policy, the Insurance Code does not require Grain Dealers to provide her with UM/UIM or PIP coverage. Moreover, the Code also

allows "any insured named in the policy" or the "named insured" to reject UM/UIM and PIP coverage in writing. TEX. INS.CODE arts. 5.06–1(1), 5.06–3(a). Even in cases where we have held policy provisions to violate the PIP and UM/UIM sections of the Code, we have not attempted to provide coverage for persons who are not insured under the policy. *See Stracener v. United Servs. Auto. Ass'n,* 777 S.W.2d 378, 380 (Tex.1989); *American Liberty Ins. Co. v. Ranzau,* 481 S.W.2d 793, 795 (Tex.1972).

For the foregoing reasons, McKee's proposed interpretations of the Grain Dealers policy are not reasonable. The only reasonable interpretation leads to the conclusion that the policy does not cover Kelly. Because we hold, as a matter of law, that the policy does not cover McKee's daughter, we reverse the judgment of the court of appeals and render judgment that McKee take nothing from Grain Dealers on his coverage-related claims.

SPECTOR, J., filed a dissenting opinion.

SPECTOR, Justice, dissenting.

Both the trial court and the court of appeals agreed that the insurance policy at issue in this case covered Kelly McKee's claim. Nevertheless, this Court concludes that the disputed policy provisions lend themselves to only one reasonable interpretation so that Kelly's claims are not covered. 943 S.W.2d at 459. Because I believe that the policy is ambiguous, I dissent.

As the majority acknowledges, we determine whether a contract is ambiguous by examining the contract in light of the circumstances present at the time the parties entered into it. *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.,* 940 S.W.2d 587, 589 (Tex.1996). In this case, the named insured under the policy in question was a corporation solely owned by Gerald McKee.[1] The uninsured motorist and personal injury protection endorsements under which Kelly sought coverage applied to "family member" claims. The court of appeals and, presum-

ably, the trial court concluded that the policy was ambiguous under the circumstances present at the time these endorsements were added to the policy. I agree that, in light of Gerald McKee's sole ownership of the corporation, the "family member" language in the PIP and UM/UIM endorsements created an ambiguity. *Accord Hager v. American W. Ins. Co.,* 732 F.Supp. 1072, 1075 (D.Mont. 1989) ("family member" language in policy issued to closely held family corporation created ambiguity so that minority shareholder family member's claims were covered); *Hawkeye–Security Ins. Co. v. Lambrecht & Sons, Inc.,* 852 P.2d 1317, 1319 (Colo.Ct.App. 1993) (wife of sole shareholder of named insured corporation was covered under uninsured motorist policy provisions making "any family member" an additional insured); *Ceci v. National Indem. Co.,* 225 Conn. 165, 622 A.2d 545, 549 (1993) (uninsured motorist endorsement providing coverage to "family members" was ambiguous and thus covered claims of brother of sole shareholder of named insured corporation); *see also Roepke v. Western Nat'l Mut. Ins. Co.,* 302 N.W.2d 350, 353 (Minn.1981) (survivors of named corporate insured's sole shareholder were entitled to stack coverage because decedent should be viewed as an "insured" under reverse corporate veil piercing theory); *American Bankers Ins. Co. of Florida v. Stack,* 208 N.J.Super. 75, 504 A.2d 1219, 1222 (1984) (policy issued to unincorporated trade name business covered company owner's son's claim); *King v. Nationwide Ins. Co.,* 35 Ohio St.3d 208, 519 N.E.2d 1380, 1383–84 (1988) (policy issued to community action agency containing family-oriented language was ambiguous so that employee's claim was covered); *Carrington v. St. Paul Fire & Marine Ins. Co.,* 169 Wis.2d 211, 485 N.W.2d 267, 270 (1992) (corporate youth home's policy containing "family member" language covered claims of children residing at the home). Because the policy is ambiguous, it must be construed in favor of coverage. *See Kelly Assocs., Ltd. v. Aetna Cas. & Sur.,* 681

---

1. I agree with the court of appeals' conclusion that attorney Scott Stolley's coverage letter produced by Grain Dealers in response to the McKees' request for production of documents

constitutes valid summary judgment proof that Gerald McKee was the sole shareholder of the corporation. *See* 943 S.W.2d 456.

S.W.2d 593, 596 (Tex.1984); *Blaylock v. American Guar. Bank Liab. Ins. Co.*, 632 S.W.2d 719, 721 (1982).

The majority's conclusion that the policy language at issue here is not ambiguous defies common sense: the two lower courts in this case and the courts of several other states have discerned a lack of clarity that escapes the majority. I would affirm the judgment of the court of appeals and render judgment for the McKees.