NATIONWIDE MUTUAL INSURANCE COMPANY, PLAINTIFF v. BRENDA KAY MABE, ET AL, DEFENDANTS

JESSE WILLARD SCOTT, JR., INDIVIDUALLY, AS THE PARENT OF LUCINDA SUE SCOTT, AND AS THE ADMINISTRATOR OF THE ESTATE OF CAROLYN MABE SCOTT, AND LUCINDA SUE SCOTT, BY HER GUARDIAN AD LITEM, ANNE CONNOLLY, THIRD-PARTY PLAINTIFFS v. NORTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY, THIRD-PARTY DEFENDANT

BRENDA KAY MABE, ROGER LEE MABE, KIMBERLY HOPE MABE, A MINOR B/H/G/A/L S. MARK RABIL AND HEATHER DORA MABE, A MINOR B/H/G/A/L GREGORY W. SCHIRO, PLAINTIFFS v. ROBERT LEONARD GREGORY, AND MARY ELIZABETH WILSON, DEFENDANTS

JESSE WILLARD SCOTT, JR., INDIVIDUALLY AS THE PARENT OF LUCINDA SUE SCOTT AND AS THE ADMINISTRATOR OF THE ESTATE OF CAROLYN MABE SCOTT, AND LUCINDA SUE SCOTT, B/H/G/A/L ANNE CONNOLLY, PLAINTIFFS v. ROBERT LEONARD GREGORY, MARY ELIZABETH WILSON, AND JODY RAY BULLINS, DEFENDANTS

No. 9317SC40

(Filed 21 June 1994)

1. **Insurance § 690 (NCI4th)— automobile accident—limit of liability—prejudgment interest**

The trial court erred in an action arising from an automobile accident by ordering that Nationwide pay prejudgment interest where Nationwide had tendered its policy limits to the court, mediation ensued, the parties consented to judgments, and Nationwide agreed to pay its policy limits pro rata to the claimants. There is no statutory duty which requires a liability insurance carrier to pay prejudgment interest in addition to its limit of liability under the policy and a liability carrier's obligation to pay prejudgment interest in addition to its stated limits is governed solely by the language in the policy. Although the claimants assert that prejudgment interest was included in a policy provision governing payment of costs, the policy contains a clause defining prejudgment interest as part of damages and that clause is controlling. Moreover, prejudgment interest here would require Nationwide to pay an additional $300,000 over and above its policy limit of $300,000, an obviously absurd result which is

clearly not what the parties intended. Nationwide was obligated to pay prejudgment interest as part of damages up to its liability limit of $300,000, but since the total judgments exceed the policy's limit of liability, the individual claimants were not entitled to any prejudgment interest.

**Am Jur 2d, Automobile Insurance § 428.**

2.  **Insurance § 532 (NCI4th)— automobile accident—UIM coverage—owned vehicle exclusion—contrary to statutory terms**

    The trial court in an automobile accident case correctly held that an "owned vehicle" exclusion in the UIM section of a Farm Bureau automobile insurance policy was not enforceable where, but for the owned vehicle exclusion, the claimants would be first class insured persons. An owned vehicle exclusion is contrary to the terms of N.C.G.S. § 20-279.21(b)(4) whether it is judicially imposed or contained in the UIM portion of the policy. As long as an individual is a first classed insured person, he or she is covered.

    **Am Jur 2d, Automobile Insurance § 322.**

3.  **Insurance § 528 (NCI4th)— automobile accident—UIM coverage—private passenger motor vehicle—low boy trailer**

    The claimants were not entitled to intrapolicy stacking in an action arising from an automobile accident where there was no dispute that this was a nonfleet policy and the two vehicles involved were a Mack truck and a low boy trailer. Under the version of N.C.G.S. § 58-40-10(1) in effect at the time of the accident, it is more than obvious that the low boy trailer is not a private passenger motor vehicle. Although the claimants argue that N.C.G.S. § 20-4.01(23) would include the trailer within the definition of motor vehicle, N.C.G.S. § 20-279.21(b)(4) explicitly provides that we look to the definitions in Chapter 58.

    **Am Jur 2d, Automobile Insurance § 322.**

Appeal by plaintiff, Nationwide Mutual Insurance Company; appeal by plaintiffs, Brenda Kay Mabe, Roger Lee Mabe, Kimberly Hope Mabe, a minor b/h/g/a/l S. Mark Rabil, Heather Dora Mabe, b/h/g/a/l Gregory W. Schiro; appeal by third-party plaintiffs, Jesse Willard Scott, Jr., as the Administrator of the Estate of Carolyn Mabe

NATIONWIDE MUTUAL INS. CO. v. MABE

[115 N.C. App. 193 (1994)]

Scott and Lucinda Sue Scott, by her guardian ad litem, Anne Connolly; and appeal by third-party defendant, North Carolina Farm Bureau Mutual Insurance Company from Order and Judgment filed 28 September 1992 by Judge James C. Davis in Stokes County Superior Court. Heard in the Court of Appeals 18 November 1993.

*Petree Stockton, by James H. Kelly, Jr. and Edwin W. Bowden, for plaintiff-Nationwide.*

*Theodore M. Molitoris for defendants and third-party plaintiffs-Jesse Willard Scott, Jr., Individually and as the Parent of Lucinda Sue Scott and for Lucinda Sue Scott.*

*John E. Gehring for defendant and third-party plaintiff-Jesse Willard Scott, Jr., as the Administrator of the Estate of Carolyn Mabe Scott.*

*Metcalf, Vrsecky & Beal, by Anthony J. Vrsecky, for defendants-Brenda Kay Mabe, Roger Lee Mabe, Kimberly Hope Mabe and Heather Dora Mabe.*

*Nichols, Caffrey, Hill, Evans & Murrelle, by Paul D. Coates and David L. Brown, for defendant-North Carolina Farm Bureau Mutual Insurance Company.*

Lewis, Judge.

The facts of this case arise out of an automobile accident, but due to the numerous parties and issues involved, its resolution has become more than complex. On 16 February 1990, Lucinda Sue Scott, Brenda Kay Mabe, Kimberly Hope Mabe, and Heather Dora Mabe were all passengers in a vehicle operated by Carolyn Mabe Scott traveling along North Carolina Highway 89 when it was struck head-on by a 1989 Toyota truck. As a result of the accident, Carolyn Mabe Scott was killed and the remaining passengers all suffered extensive injuries. The occupants of the Toyota truck were Robert Leonard Gregory ("Gregory") and Jody Ray Bullins ("Bullins"). It was unclear who was driving the Toyota truck, but the parties consented that judgment would be entered against Gregory. At the time of the accident, the Toyota truck was titled in the name of Gregory's mother, Mary Elizabeth Wilson ("Wilson"), and it was alleged that Gregory was driving the truck with his mother's permission. Nationwide Mutual Insurance Company ("Nationwide") had in effect a liability policy on the Toyota truck providing coverage in the amount of $100,000 per person and $300,000 per accident. In addition, North Carolina Farm Bureau Mutual Insurance Company ("Farm Bureau") had in effect a business automobile policy issued to Jesse Willard

Scott which provided underinsured motorist coverage (UIM) of $100,000.

On 4 May 1990, a complaint was filed on behalf of Brenda Kay Mabe, Roger Lee Mabe, Kimberly Hope Mabe and Heather Dora Mabe (hereafter "the Mabes") against Gregory and Wilson. The complaint alleged that Gregory had driven the Toyota truck in a negligent manner while intoxicated and that his use of the truck fell within the family purpose doctrine. Thereafter, on 24 September 1990, Jesse Willard Scott, Jr., and his daughter, Lucinda Sue Scott (hereafter "the Scotts"), filed suit against Gregory and Wilson alleging the same causes of action as in the Mabes' complaint. The Mabes and the Scotts will be referred to collectively as "the claimants."

On 14 March 1991, Nationwide, in an attempt to settle the claims arising out of the accident, offered to pay its policy limits to the claimants. Believing that the potential claims exceeded the extent of its liability coverage, Nationwide proposed a pro rata distribution in the following amounts and conditioned settlement upon concurrent acceptance by all of the claimants:

| | |
|---|---|
| Estate of Carolyn Mabe Scott— | $ 35,050.00 |
| Lucinda Sue Scott— | $ 42,600.00 |
| Heather Dora Mabe— | $ 18,380.00 |
| Kimberly Hope Mabe— | $100,000.00 |
| Brenda Kay Mabe— | $100,000.00. |

The Scotts, however, were unable to give their unconditional acceptance, because if they were unable to obtain UIM coverage from other sources, they felt they were entitled to a larger portion of Nationwide's liability coverage. On 5 July 1991, after the claimants had refused to unconditionally accept the offer, Nationwide filed an interpleader action and named all of the claimants as defendants. Nationwide then tendered its $300,000 policy limits to the court and asked for an order declaring that it had satisfied its policy obligations.

In lieu of trial, mediation followed and the parties consented that judgments would be entered against Gregory in the following amounts:

**NATIONWIDE MUTUAL INS. CO. v. MABE**

[115 N.C. App. 193 (1994)]

| | |
|---|---|
| Lucinda Sue Scott | $125,000.00 |
| Carolyn Mabe Scott Estate | $400,000.00 |
| Brenda Kay Mabe | $500,000.00 |
| Kimberly Hope Mabe | $600,000.00 |
| Heather Dora Mabe | $ 40,000.00 |
| Roger Lee Mabe | $ 15,000.00. |

Based on these judgments, Nationwide agreed to pay its $300,000.00 policy limits pro rata in the following amount:

| | |
|---|---|
| Lucinda Sue Scott | $ 29,280.00 |
| Carolyn Mabe Scott Estate | $ 55,040.00 |
| Brenda Kay Mabe | $100,000.00 |
| Kimberly Hope Mabe | $100,000.00 |
| Heather Dora Mabe | $ 11,000.00 |
| Roger Lee Mabe | $ 3,900.00. |

The entry of the consent judgment and the subsequent pro rata distribution of Nationwide's coverage left only two issues to be determined by the trial court: (1) whether Nationwide owed prejudgment interest, and (2) the extent of Farm Bureau's UIM coverage. All parties moved for summary judgment and a hearing was held on 8 September 1992. The trial court ordered that Nationwide owed prejudgment interest to each of the claimants based on their respective pro rata shares of the $300,000 liability coverage. The trial court further ordered that Farm Bureau's UIM liability to the Scott's was $200,000. All parties gave timely notice of appeal and this matter is properly before this Court.

### Prejudgment Interest

[1] The first issue we address is the extent, if any, to which Nationwide must pay prejudgment interest. There are three possible outcomes to this issue. The first, argued by the claimants, is that Nationwide must pay prejudgment interest on the total amount of the consent judgments. The second option, urged by Nationwide, is that $300,000 is the extent of its liability since the combined judgments exceed this amount. The last option, and the one chosen by the trial court, is that Nationwide is required to pay prejudgment interest on the respective pro rata shares of the claimants. We find the second option advanced by Nationwide to be the better reasoned position, and reverse the ruling of the trial court.

Prejudgment interest is governed by N.C.G.S. § 24-5 which provides in pertinent part:

In an action other than contract, the portion of money judgment designated by the fact finder as compensatory damages bears interest from the date the action is instituted until the judgment is satisfied. Interest on an award in an action other than contract shall be at the legal rate.

N.C.G.S. § 24-5(b) (1991). There is no statutory duty which requires a liability insurance carrier to pay prejudgment interest in addition to its limit of liability under the policy. *Sproles v. Greene*, 329 N.C. 603, 407 S.E.2d 497 (1991). Nor is N.C.G.S. § 24-5 a part of the Financial Responsibility Act so as to require that it be written into every liability policy. *Baxley v. Nationwide Mut. Ins. Co.*, 334 N.C. 1, 430 S.E.2d 895 (1993). Accordingly, a liability carrier's obligation to pay prejudgment interest in addition to its stated limits is governed solely by the language of the policy.

In interpreting insurance policies, our appellate courts have established several rules of construction. Of these, the most fundamental rule is that the language of the policy controls. *See Smith v. Nationwide Mut. Ins. Co.*, 328 N.C. 139, 400 S.E.2d 44 (1991). Other rules include: if a policy is not ambiguous, then the court must enforce the policy as written and may not reconstruct the policy under the guise of interpreting an ambiguous provision. *Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co.*, 276 N.C. 348, 172 S.E.2d 518 (1970). If a policy defines a term, then that definition is to be applied. *Id.* It does not matter that a broader or narrower meaning is normally given to the term. *York Indus. Center, Inc. v. Michigan Mut. Liab. Co.*, 271 N.C. 158, 155 S.E.2d 501 (1967). In addition, all parts of an insurance policy are to be construed harmoniously so as to give effect to each of the policy's provisions. *See Woods v. Nationwide Mut. Ins. Co.*, 295 N.C. 500, 246 S.E.2d 773 (1978).

As originally issued, the Nationwide policy contained the following relevant provisions:

**PART B**

**SUPPLEMENTARY PAYMENTS**

In addition to our limit of liability, we will pay on behalf of a **covered person**:

3. Interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay

that part of the judgment which does not exceed our limit of liability for this coverage. (Emphasis added).

### LIMIT OF LIABILITY

The limit of liability shown in the Declarations for "each person" for Bodily Injury Liability is our maximum limit of liability for all damages for bodily injury sustained by any one person in any one auto accident. Subject to this limit for "each person", the limit of liability shown in the Declarations for "each accident" for Bodily Injury Liability is our maximum limit of liability for all damages for bodily injury resulting from any one auto accident. . . . This is the most we will pay as a result of any one auto accident regardless of the number of:

1. **Covered persons**;
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the auto accident.

The Declarations page of the policy reveals that Nationwide's limit of liability is $300,000 per accident. In January 1984, the Nationwide policy was amended by endorsement 1948 which provided:

### II. LIABILITY COVERAGE

Part B is amended as follows:

A. Supplementary Payments provision is amended to read:

In addition to our limit of liability, we will pay on behalf of a covered person:

3. Interest accruing after any suit we defend is instituted. Our duty to pay interest ends when we pay our part of the judgment which does not exceed our limit of liability for this coverage. (Emphasis added).

Thereafter, the Nationwide policy was again amended by endorsement 2096. This amendment was presumably prompted by the Supreme Court's decision in *Lowe v. Tarble*, 313 N.C. 460, 329 S.E.2d 648 (1985), and embodies all of the changes which are relevant to this appeal. Specifically, the wording of **Part B** of the LIABILITY COVERAGE section was modified as follows:

A. The first paragraph of the Insuring Agreement is replaced by the following:

We will pay damages for bodily injury or property damage for which any insured becomes legally responsible because of an auto accident. Damages <u>include prejudgment interest awarded against the insured</u>. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted. We have no duty to defend any suit or settle any claim for bodily injury or property damage not covered under this policy. (Emphasis added).

B. Section 3. of the Supplementary Payments provision is replaced by the following:

In addition to our limit of liability, we will pay on behalf of an insured:

3. <u>all costs taxed against the insured</u> and interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for this coverage. (Emphasis added).

The claimants assert that under the policy Nationwide owes prejudgment interest on the entire amount. In support of this position, the claimants rely almost exclusively on the language in Part B of endorsement 2096 that Nationwide "[i]n addition to [its] limit of liability, . . . will pay on behalf of an insured . . . <u>all costs taxed against the insured</u>." (Emphasis added). The claimants argue that this language is dispositive because in *Lowe v. Tarble*, 313 N.C. 460, 329 S.E.2d 648 (1985), the Supreme Court interpreted identical language to mean that an insurance company was liable for prejudgment interest. The specific terms of the policy at issue in Lowe provided that the insurance company would "[p]ay all expenses incurred by the company, <u>all costs taxed against the insured</u> in any such suit and all interest accruing after entry of judgment until the company has paid, tendered or deposited in court such part of such judgment as does not exceed the limit of the company's liability thereon." *Id.* at 463, 329 S.E.2d at 651 (emphasis added). The Supreme Court held that under the above language, prejudgment interest was a cost which the insurer was obligated to pay.

As stated previously, when interpreting any insurance policy it is the language of the policy which controls. This is evidenced by the

specific holding in *Lowe* where the Supreme Court stated "we hold that prejudgment interest provided for by N.C.G.S. 24-5 is a cost within the meaning of the <u>contract which, under the contract in the present case</u>, the insurer is obligated to pay." *Id.* at 464, 329 S.E.2d at 651 (emphasis added). The "present case" language demonstrates a clear intent on the part of the Supreme Court to decide the issue based on the specific policy before it and not to make a blanket statement that prejudgment interest is always a cost. This fact is further evidenced by the recent decision in *Sproles v. Greene*, 329 N.C. 603, 407 S.E.2d 497 (1991). There the Supreme Court addressed an almost identical set of facts as those in *Lowe*, but reached an entirely different result. Instead of using the language "all costs taxed against the insured," the policy in *Sproles* contained the language "all defense costs." On appeal the Supreme Court held *Lowe* was inapplicable because only the relevant language of the policy in *Lowe* was at issue. *Id.* at 611, 407 S.E.2d at 502. The Supreme Court further held that the language "all defense costs" was not as broad as "all costs taxed against the insured," because "all defense costs" included only such things as attorney fees, deposition expenses, and court costs, but not prejudgment interest. *Id.*

Therefore, *Lowe* and *Sproles* clearly establish that our courts will look to the specific terms of a policy in deciding whether or not a liability carrier is required to pay prejudgment interest in addition to its limit of liability. The Nationwide policy in the present case contains an additional clause defining prejudgment interest as part of damages. We find that it is this clause which is controlling and not the language in *Lowe*. Even without this clause defining prejudgment interest as an element of damages, we would still reach the same conclusion because our Supreme Court has recently held that prejudgment interest is an element of damages because it compensates an individual for the loss of the use of his money. *Baxley v. Nationwide Mut. Ins. Co.*, 334 N.C. 1, 430 S.E.2d 895 (1993) (citing *Hartford Accident & Indem. Co. v. U.S. Fire Ins. Co.*, 710 F. Supp. 164 (E.D.N.C. 1989), *aff'd*, 918 F.2d 955 (4th Cir. 1990)). Prejudgment interest on the total amount of the judgments here would obligate Nationwide to pay an additional $300,000 over and above its policy limit of $300,000 for a total of $600,000. This is an obviously absurd result. This is clearly not what the parties intended, nor is it the type of risk which Nationwide contemplated when it established the premium to be paid.

The claimants have articulated several sound policy arguments in their favor, but policy alone is not sufficient to overcome the plain and unambiguous language of the policy. Therefore, we find that Nationwide is obligated to pay prejudgment interest as part of the total of any damages up to its liability limit of $300,000. In this case, since the total judgments exceed the policy's limit of liability, $300,000 is the extent of Nationwide's liability and the individual claimants are not entitled to any prejudgment interest.

## UIM Coverage

The second issue which we address is the extent of Farm Bureau's UIM coverage. At the time of the accident, Farm Bureau had in effect a business policy issued to Jesse Willard Scott ("Scott") which provided UIM coverage of $100,000 per accident. Listed on the policy as insured vehicles were a 1964 Mack truck and a 1978 low boy trailer. The Mack truck and the low boy trailer were used together to transport a tractor which Scott used in his farming operations.

When Nationwide filed its interpleader action, the Scotts filed a third-party complaint against Farm Bureau seeking a declaratory judgment as to Farm Bureau's obligations under the policy. Farm Bureau denied coverage arguing that the Scotts were not entitled to any UIM coverage on a vehicle owned by the Scotts but not listed on the policy. The trial court disagreed and held that Farm Bureau had a limit of liability to the estate of Carolyn Mabe Scott and to Lucinda Sue Scott of $200,000 less the amount of primary coverage less Nationwide's UIM coverage. Farm Bureau has appealed, but for the reasons discussed below, we affirm the trial court's judgment as modified.

Farm Bureau's argument in denying coverage is two-part. First, Farm Bureau argues that it does not provide coverage on a vehicle owned by the Scotts but not listed on the policy because the risk involved in being in an accident while in an owned vehicle is greater than being in an accident while in a nonowned vehicle. Farm Bureau argues that it should have been allowed to charge a higher premium for this additional risk and the fact that it did not shows that UIM coverage for an owned vehicle not listed on the policy was not contemplated by the parties. Secondly, Farm Bureau contends that neither the 1964 Mack truck nor the 1978 low boy trailer fits within the definition of private passenger motor vehicles so as to allow stacking. We address the owned vehicle exclusion first.

A.

Owned Vehicle Exclusion

**[2]**  An "owned vehicle," or "household-owned" or "family-owned" vehicle, exclusion in the UIM section of a policy is one which purports to deny UIM coverage to a family member injured while in a family-owned vehicle not listed in the policy at issue. Farm Bureau's argument for an owned vehicle exclusion stems from the "covered autos" portion of the policy. Under this section numerical symbols are used to describe the type of vehicles that may be covered under the policy. The symbol beside the UIM coverage in Scott's policy is "07" relating to SPECIFICALLY DESCRIBED "AUTOS." Symbol 07 applies only to those autos listed on the Declarations page for which a premium has been charged, and the Declarations page of Scott's policy lists only the Mack truck and the low boy trailer, but not the vehicle Carolyn Mabe Scott was driving at the time of her death. Thus, Farm Bureau argues that the plain language of the policy controls and that the Scotts are not entitled to any UIM coverage.

Section 20-279.21(b)(4) of the Financial Responsibility Act governs UIM coverage, *Smith v. Nationwide Mut. Ins. Co.*, 328 N.C. 139, 142, 400 S.E.2d 44, 47 (1991), and therefore, its provisions are terms of the Farm Bureau policy to the same extent as if they had been written into the policy. *See Baxley v. Nationwide Mut. Ins. Co.*, 334 N.C. 1, 430 S.E.2d 895 (1993). If the terms of Farm Bureau's policy conflict with N.C.G.S. § 20-279.21(b)(4), then the statute controls. *Id.* As stated in *Sutton v. Aetna Casualty & Surety Co.*, 325 N.C. 259, 265, 382 S.E.2d 759, 763 (1989),

> "[t]he cardinal principle of statutory construction is that the intent of the legislature is controlling." Legislative intent can be ascertained not only from the phraseology of the statute but also from the nature and purpose of the act and the consequences which would follow its construction one way or the other. "The Court will not adopt an interpretation which results in injustice when the statute may reasonably be otherwise consistently construed with the intent of the act. Obviously, the Court will, whenever possible, interpret a statute so as to avoid absurd consequences."

(Citations omitted). The purpose of the Financial Responsibility Act is to compensate innocent victims of financially irresponsible motorists. *Id.* The specific issue we address is whether Farm

Bureau's policy, which imposes an owned vehicle exclusion, is inconsistent with the terms of N.C.G.S. § 20-279.21(b)(4). This is a question which our Supreme Court specifically left open in *Smith*, recognizing that even the commentators disagree as to whether such an exclusion is valid. *Smith*, 328 N.C. at 149, 400 S.E.2d at 51.

At the outset we note that Farm Bureau has cited several cases supporting the owned vehicle exclusion. *See N.C. Farm Bureau Mut. Ins. Co. v. Walton*, 107 N.C. App. 207, 418 S.E.2d 837 (1992); *Kruger v. State Farm Mut. Auto. Ins. Co.*, 102 N.C. App. 788, 403 S.E.2d 571 (1991). We do not believe these cases are dispositive, because they concern liability coverage and not UIM coverage. As our Supreme Court has stated on several occasions, there is a difference between liability coverage and UM/UIM coverage, because UM/UIM coverage follows the person, not the vehicle. *Smith*, 328 N.C. at 149, 400 S.E.2d at 50.

The beginning point of any discussion of UIM coverage is the Supreme Court's exhaustive opinion in *Smith v. Nationwide Mutual Insurance Co.*, 328 N.C. 139, 400 S.E.2d 44 (1991). In *Smith*, the issue was whether a judicially created owned vehicle exclusion existed for purposes of UM/UIM coverage. In making this determination the Court looked to the definition of "persons insured" in N.C.G.S. § 20-279.21(b)(3) and incorporated by reference into N.C.G.S. § 20-279.21(b)(4), which provided:

> For purposes of this section "persons insured" means the named insured and, while resident of the same household, the spouse of any named insured and relatives of either, while in a motor vehicle or otherwise, and any person who uses with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies and a guest in such motor vehicle to which the policy applies or the personal representative of any of the above or any other person or persons in lawful possession of such motor vehicle.

N.C.G.S. § 20-279.21(b)(3) (1989). This definition essentially established two classes of insured persons: " '(1) the named insured and, while resident of the same household, the spouse of the named insured and relatives of either and (2) any person who uses with the consent, express or implied, of the named insured, the insured vehicle, and a guest in such vehicle.' " *Smith*, 328 N.C. at 143, 400 S.E.2d at 47 (quoting *Crowder v. N.C. Farm Bureau Mut. Ins. Co.*, 79 N.C. App. 551, 554, 340 S.E.2d 127, 129, *disc. review denied*, 316 N.C. 731,

345 S.E.2d 387 (1986)). In *Smith*, the Supreme Court held that there was no judicially created owned vehicle exclusion and that members of the first class are persons insured even if the insured vehicle is not involved in the accident. *Id.* at 150, 400 S.E.2d at 51. Farm Bureau has admitted in its brief that, but for the owned vehicle exclusion imposed by the policy, Carolyn Mabe Scott and Lucinda Sue Scott would be first class insured persons.

Based on *Smith* and other decisions by our Supreme Court we find that an owned vehicle exclusion is contrary to the terms of N.C.G.S. § 20-279.21(b)(4), whether it is judicially imposed or whether it is contained in the UIM portion of the policy. To hold otherwise would allow insurance companies to write into N.C.G.S. § 20-279.21(b)(4) and into their policies a restriction which we do not believe the legislature intended. Since *Smith*, the Supreme Court has made even broader statements about the extent of UIM coverage. In *Bass v. North Carolina Farm Bureau Mutual Insurance Co.*, 332 N.C. 109, 418 S.E.2d 221 (1992), the defendant argued that "*Smith* [was] limited to its facts so that an insured injured while riding in an owned vehicle not included in a policy insuring other vehicles, can recover UIM benefits from that policy only if the owned vehicle is covered by a policy which also contains UIM coverage." *Id.* at 111, 418 S.E.2d at 222. The Supreme Court criticized the defendant as reading Smith too narrowly and stated that its decision rested simply on whether the plaintiff was a person insured. *Id.* Further, in *Harris v. Nationwide Mutual Insurance Co*, 332 N.C. 184, 420 S.E.2d 124 (1992), when Nationwide attempted to argue that intrapolicy stacking was available only to an owner of a vehicle or to a vehicle listed on a policy, the Supreme Court disagreed, holding that

> [w]hen one member of a household purchases first-party UIM coverage, it may fairly be said that he or she intends to protect all members of the family unit within the household. The legislature recognized this family unit for purposes of UIM coverage when it defined "persons insured" of the first class as "the named insured and, while resident of the same household, the spouse of any named insured and relatives of either . . . ." These persons insured of the first class are protected, based on their relationship, whether they are injured while riding in one of the covered vehicles or otherwise.

*Harris*, 332 N.C. at 193-94, 420 S.E.2d at 130 (citations omitted).

We find that these statements evidence a clear intent on the part of the Supreme Court that as long as an individual is a first class insured person, he or she is covered. To hold otherwise would defeat the intention of individuals who purchase UIM coverage to protect all of their family members and would abrogate the distinctions between liability coverage and UM/UIM coverage. Farm Bureau argues that this result will encourage individuals to obtain a single policy containing UIM coverage to protect the entire family unit. We see nothing wrong with this outcome because the same individual who takes out a single policy will also be limited in the extent to which he can stack to fully recover if his injuries exceed the amount of liability insurance. Finding that the owned vehicle exclusion is unenforceable is also consistent with the remedial nature and the liberal construction to be afforded the Financial Responsibility Act so as to accomplish its purposes. *Sutton v. Aetna Casualty & Sur. Co.*, 325 N.C. 259, 382 S.E.2d 759 (1989). Although Farm Bureau has cited *Sproles v. Greene*, 329 N.C. 603, 407 S.E.2d 497 (1991), in favor of the owned vehicle exclusion, we find that Farm Bureau's reliance on Sproles is misplaced because that case dealt with second class insureds and not first class insureds as is the case here. Accordingly, we hold that Farm Bureau's owned vehicle exclusion is unenforceable and the Scotts are entitled to stack their UIM coverage if the vehicles listed in the policy are private passenger motor vehicles.

## B.

## Private Passenger Vehicles

[3] Farm Bureau argues that the trial court erred in concluding that the Scotts were entitled to $200,000 in UIM coverage. Instead, Farm Bureau argues that the extent of its liability is $100,000 because neither the 1964 Mack truck nor the 1978 low boy trailer is a private passenger vehicle. Farm Bureau asserts this point because intrapolicy stacking is available only when the coverage is non-fleet and the vehicle covered is a private passenger motor vehicle. *Aetna Casualty & Sur. Co. v. Fields*, 105 N.C. App. 563, 414 S.E.2d 69, *disc. review denied*, 331 N.C. 383, 417 S.E.2d 788 (1992). This requirement comes directly from N.C.G.S. § 20-279.21(b)(4) (1989) which, at the time of the accident in this case, provided in pertinent part:

> In any event, the limit of underinsured motorist coverage applicable to any claim is determined to be the difference between the amount paid to the claimant pursuant to the exhausted liability policy and the total limits of the owner's

underinsured motorist coverages provided in the owner's poli-
cies of insurance; it being the intent of this paragraph to provide
to the owner, in instances where more than one policy may apply,
the benefit of all limits of liability of underinsured motorist cov-
erage under all such policies: *Provided that this paragraph shall
apply only to nonfleet private passenger motor vehicle insur-
ance as defined in G.S. 58-40-15(9) and (10).* (Emphasis
added).

Farm Bureau does not dispute that this is a nonfleet policy. Thus, the
only issue is whether or not the Mack truck and the low boy trailer
are private passenger motor vehicles.

While section 20-279.21(b)(4) references sections 58-40-15(9)
and (10), we note that the definition of private passenger motor vehi-
cle is found in section 58-40-10(1). Since Carolyn Mabe Scott's death,
N.C.G.S. § 58-40-10(1) has been amended. However, we must deter-
mine whether the Scotts were entitled to intrapolicy stacking at the
time of the accident, not at the time of this appeal. At the time of the
accident, N.C.G.S. § 58-40-10(1) (1989) defined private passenger
motor vehicles as:

(a) A motor vehicle of the private passenger or station wagon
type that is owned or hired under a long-term contract by the
policy named insured and that is neither used as a public or
livery conveyance for passengers nor rented to others with-
out a driver; or

(b) A motor vehicle with a pick-up body, a delivery sedan or a
panel truck that is owned by an individual or by husband and
wife or individuals who are residents of the same household
and that is not customarily used in the occupation, profes-
sion, or business of the insured other than farming or ranch-
ing. Such vehicles owned by a family farm copartnership or
corporation shall be considered owned by an individual for
purposes of this Article.

From these definitions, it seems more than obvious that the low boy
trailer is not a private passenger motor vehicle. It has no motor and
it has no place for passengers. The low boy trailer resembles neither
a station wagon nor a pick-up truck. Thus, we find that the low boy
trailer is not a private passenger motor vehicle within the meaning of
N.C.G.S. § 20-279.21(b)(4).

The Scotts argue that despite the language in N.C.G.S. § 58-40-10(1), we should look to the definition of a motor vehicle in N.C.G.S. § 20-4.01(23) to find that the low boy trailer is a private passenger motor vehicle. N.C.G.S. § 20-4.01(23) includes within the definition of motor vehicles "[e]very vehicle which is self-propelled and every vehicle designed to run upon the highways which is pulled by a self-propelled vehicle." The Scotts argue that since the low boy trailer is designed to be pulled by a truck, it is a motor vehicle within the definition of Chapter 20. Although we agree that the low boy trailer may be a motor vehicle within the definition of Chapter 20, we see no reason to even look to Chapter 20. N.C.G.S. § 20-279.21(b)(4) explicitly provides that we look to the definitions in Chapter 58, and under those definitions we find the low boy trailer is not a private passenger motor vehicle. We hold the Scotts are not entitled to intrapolicy stacking and the extent of Farm Bureau's coverage is $100,000.

The last issue raised by Farm Bureau is that the trial court erred in failing to grant its motion for a new trial or in the alternative to reopen the evidence so that additional evidence could be introduced. The essence of Farm Bureau's motion was that it wanted to introduce additional evidence as to the character of the Mack truck to prove that it was not a private passenger motor vehicle. We have carefully considered the issue and see no reason to address it further. Motions for new trials are directed to the discretion of the trial court and we find no abuse of discretion. *See Worthington v. Bynum*, 305 N.C. 478, 290 S.E.2d 599 (1982). On the issue of Farm Bureau's UIM coverage, the judgment of the trial court is modified and affirmed.

The complete disposition of this matter is as follows: On the issue of prejudgment interest the judgment of the trial court is reversed. On the issue of UIM coverage, the judgment of the trial court is affirmed as modified.

Reversed in part; and affirmed in part as modified.

Judges JOHN and McCRODDEN concur.