IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-594

Filed 7 May 2025

Wake County, No. 22CVS006400

NORTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY, INC.,
Plaintiff,

v.

JAY A. YOUNG, Individually and DBA YOUNGS CONSTRUCTION COMPANY and
ELMA FAIRCLOTH, as Administrator of the Estate of MILDRED GRAY
WILLIAMS, Defendant.

Appeal by defendant and cross-appeal by plaintiff from order entered 25
January 2023 and judgment entered 24 October 2023 by Judges Vinston M. Rozier,
Jr. and Patrick Thomas Nadolski, respectively, in Wake County Superior Court.
Heard in the Court of Appeals 20 March 2025.

*Young Moore & Henderson, P.A., by Andrew P. Flynt and Angela Farag Craddock, for the plaintiff-appellee/cross-appellant.*

*DAS Law Group, P.A., by Derek P. Adler, and Shelby L. Gilmer, for the defendant-appellant/cross-appellee.*

TYSON, Judge.

Emma Faircloth, as Administrator of the Estate of Mildred Gray Williams
("Defendant") appeals from order denying summary judgment on 25 January 2023
and judgment entered 24 October 2023 following a bench trial. North Carolina Farm
Bureau Mutual Insurance Company, Inc. ("Plaintiff") cross-appeals from the

25 January 2023 summary judgment order denying its motion. We affirm.

## I. Background

Jay A. Young ("Young") is a general contractor in White Lake, doing business as Youngs Construction Company. Young's main business involved remodel of residential kitchens and bathrooms. Young was introduced to Mildred Gray Williams ("Decedent") through Steven Blount in 2016. Blount owned several vacation rental properties and a car wash. Decedent worked at odd jobs for Blount at his properties and car wash. During the summer rental season Decedent worked for Blount three to four days a week. Outside of the summer rental season, Decedent would work for Blount "from time to time" and whenever he was out of town.

Decedent also worked odd jobs for Young, both at his house and with his construction business. Decedent worked four times for Young between 2016 and 2019. Young paid Decedent at a rate of $10 per hour and always paid her in cash. Young also gave Decedent money "a bunch of times, nothing to do with work."

Young contracted with White Lake Water Rescue to serve as the general contractor to replace the metal roof on the Water Rescue Building at Station 75. Young purchased the materials for the project and subcontracted with Willie Locklear/Locklear Roofing to perform the labor to install the materials on the project.

Decedent's car became inoperable and required repairs. Decedent was working at Blount's car wash to earn the money needed to repair her car. Decedent also performed odd jobs for other people in White Lake to earn money. Blount loaned

Decedent an old work truck for transportation to work at his car wash and at other jobs she found. In October 2019, Blount was out of town and Decedent was checking on his car wash to "see if any trash needed to be hauled off."

Decedent went to a meeting at the fire department on 7 October 2019. At the meeting, Decedent learned about the roofing project at the Water Rescue Building. Blount was also aware of the Water Rescue Building project and told Young that Decedent "was available if he needed somebody to do some cleanup." Decedent drove Blount's work truck to the Water Rescue Building and asked Young for work. Young informed Decedent he did not "have anything for [her] to do."

After Decedent's insistence, Young relented and he allowed her to pick up trash around the jobsite. Decedent and Young did not discuss payment. Young specifically told Decedent she was prohibited from getting onto the roof or to help Locklear's crew. Young left the Water Rescue Building site to get materials. Decedent began helping Locklear's crew on the site. Two panels and a skylight were removed leaving an exposed hole approximately fifteen feet above a concrete floor. No fall protections, warnings, or precautions were present to prevent an individual from falling through the opening.

Decedent was walking along the roof carrying a metal panel when a wind gust caused the metal panel to shake. Decedent lost her footing and fell through the hole, travelled fifteen feet and landed on the concrete floor below. Decedent suffered a fatal head injury and internal bleeding.

The North Carolina Occupational Safety and Health Division ("OSH") assigned Safety and Health Officer Howard Laurie to investigate the accident. Laurie first was required to determine whether an employer/employee relationship existed for OSH to obtain jurisdiction over the accident. Laurie interviewed Young on 9 October 2019. Laurie learned Decedent had been a part-time employee of Young. Young told Laurie Decedent had worked for him several days in the past years, had worked for just that day, and he was going to pay her cash for the day.

Young later told Laurie Decedent was a volunteer on the jobsite and he was not going to pay her. Laurie concluded Young and Decedent were in an employer/employee relationship, Decedent was working for monetary compensation, and OSH asserted jurisdiction. Laurie conducted an inspection of the White Lake Water Rescue Project, noted safety violations, and recommended citations. OSH issued a Citation and Notification of Penalty to Young on 14 February 2020. OSH concluded Young's employees were exposed to fall hazards without fall protection and "the condition resulted in a fatality when an employee of Young's Construction fell through a roof opening to the concrete slab 15-feet below." OSH and Young entered into a Settlement Agreement, which included the same four citations as the Citation and Notification of Penalty but with reduced monetary penalties. In the Settlement Agreement Young had admitted "one or more" or Young's "employees were performing work."

Decedent's family listed Decedent as an employee of Youngs Construction

Company in Decedent's obituary. Defendant estate filed a lawsuit against Willie Locklear d/b/a Locklear Roofing in Bladen County Superior Court on 26 March 2021. Defendant's complaint included multiple allegations asserting Decedent was Young's employee at the time of the accident.

Defendant estate also filed a lawsuit against Jay A. Young individually and d/b/a Youngs Construction in Bladen County Superior Court on 5 October 2021. Plaintiff had issued a general liability policy to Jay Young DBA Youngs Construction for the period of 6 April 2019 until 6 April 2020. The general liability policy contained the following exclusion:

> 2. **Exclusions**
> This insurance does not apply to:
> . . .
> **e. Employer's Liability**
> "Bodily injury" to
> (1) An "employee" of the insured arising out of and in the course of:
> (a) Employment by the insured; or
> (b) Performing duties related to the conduct of the insured's business; or
> (2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.
> This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.
> This exclusion does not apply to liability assumed by the insured under an "insured contract."

The general liability policy also contained the following definitions:

> 5. "Employee" includes a "leased worker." "Employee" does

not include a "temporary worker."

. . .

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker."

. . .

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

Plaintiff provided counsel and defended Young in the Decedent's Bladen County action under a reservation of rights. Plaintiff filed a declaratory judgment action seeking a declaration the Employer's Liability exclusion bars coverage for all claims against Young and the Contractual Liability exclusion bars coverage for the breach of contract claim. Plaintiff further sought a declaration holding it had no duty to continue defending Young against the suit and no duty to indemnify Young for any judgment entered against him. Defendant-estate agreed to dismiss its pending breach of contract claim against Young with prejudice.

Defendant-estate moved for summary judgment on 1 November 2022 and filed an amended motion for summary judgment on 20 December 2022. Plaintiff opposed Defendant's motion and requested summary judgment in its favor pursuant to Rule 56(c) of the North Carolina Rules of Civil Procedure. *See* N.C. Gen. Stat. § 1A-1, Rule 56(c) (2023).

The trial court heard Plaintiff's motion for summary judgment and Defendant's request for summary judgment and denied both motions on 25 January 2023. Following a bench trial, the trial court entered a judgment declaring Plaintiff has no duty to defend Young or to indemnify him against Defendant's claims. Defendant estate appealed from the 25 January 2023 order, which denied its motion for summary judgment and from the 24 October 2023 judgment. Plaintiff cross appeals from the 25 January 2023 order denying its motion for summary judgment. Young did not appeal either the 25 January 2023 order denying his motion for summary judgment or the 24 October 2023 judgment.

## II. Jurisdiction

This Court possesses jurisdiction pursuant to N.C. Gen. Stat. § 7A-27(b) (2023).

## III. Issues

Defendant argues the trial court erred in concluding Decedent was an "employee" because she was a "volunteer;" for concluding Decedent was not a "temporary worker;" and, for making incompetent findings to conclude Decedent was an employee of Young's. Plaintiff argues they were entitled to summary judgment because Young's settlement with OSH was a binding admission he had employed Decedent.

## IV. Plaintiff's Cross-Appeal and Defendant's Appeal of the 25 January 2023 Order

Defendant appealed from and Plaintiff cross-appealed from the trial court's

25 January 2023 order which denied Defendant's and Plaintiff's motions for summary judgment. The trial court subsequently held a bench trial on the merits following entering this order. This Court does not review an order denying summary judgment when the case proceeds to trial:

> a motion for summary judgment is not reversible error when the case has proceeded to trial and has been determined on the merits by the trier of facts, either judge or jury.
>
> To grant a review of the denial of the summary judgment motion after a final judgment on the merits would mean that a party who prevailed at trial after a complete presentation of evidence by both sides with cross-examination could be deprived of a favorable verdict. This would allow a verdict reached after the presentation of all the evidence to be overcome by a limited forecast of the evidence. In order to avoid such an anomalous result, we hold that the denial of a motion for summary judgment is not reviewable during appeal from a final judgment rendered in a trial on the merits.

*WRI/Raleigh, L.P. v. Shaikh*, 183 N.C. App. 249, 252, 644 S.E.2d 245, 246-67 (2007). We dismiss Plaintiff's cross appeal. Defendant asserted an appeal of the 25 January 2023 denial of summary judgment order, but only argued issues related to 24 October 2023 judgment. Defendant's asserted appeal of the 25 January 2023 order is also dismissed.

## V.    Standard of Review

This Court has held when reviewing a bench trial:

> the standard of review on appeal is whether there was competent evidence to support the trial court's findings of

fact and whether its conclusions of law were proper in light of such facts. Findings of fact by the trial court in a non-jury trial have the force and effect of a jury verdict and are conclusive on appeal if there is evidence to support those findings. A trial court's conclusions of law, however, are reviewable *de novo.*

*Lyons-Hart v. Hart*, 205 N.C. App. 232, 235, 695 S.E.2d 818, 821 (2010) (citation omitted).

## VI.  Defendant's Arguments

### A.  Rules of Construction of Insurance Policies

Our Supreme Court stated an insurance policy is a contract, "[a]s with all contracts, the object of construing an insurance policy is to arrive at the insurance coverage intended by the parties when the policy was issued." *Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C.*, 364 N.C. 1, 9, 692 S.E.2d 605, 612 (2010) (citation and internal quotation marks omitted); *accord Woods v. Nationwide Mut. Ins. Co.*, 295 N.C. 500, 505, 246 S.E.2d 773, 777 (1978) ("[T]he goal of [insurance policy] construction is to arrive at the intent of the parties when the policy was issued.").

"[T]he most fundamental rule [in interpreting insurance policies] is that the language of the policy controls." *Nationwide Mut. Ins. Co. v. Mabe*, 115 N.C. App. 193, 198, 444 S.E.2d 664, 667 (1994). Any ambiguities in the insurance policy are "strictly construed against the insurer and in favor of the insured." *State Capital Ins. Co. v. Nationwide Mut. Ins. Co.*, 318 N.C. 534, 547, 350 S.E.2d 66, 73 (1986).

Our Supreme Court stated courts are to "construe[] liberally insurance policy revisions that extend coverage so as to provide coverage, whenever possible by reasonable construction," and "strictly construe against an insurance company those provisions excluding coverage under an insurance policy." *Harleysville Mut. Ins. Co.*, 364 N.C. at 9-10, 692 S.E.2d at 612 (citation and internal quotation marks omitted); *see State Capital Ins. Co.*, 318 N.C. at 542-43, 350 S.E.2d at 71 (1986) ("Exclusionary clauses are interpreted narrowly[,] while coverage clauses are interpreted broadly to provide the greatest possible protection to the insured.").

If the insurance policy specifically defines a word or term, that definition governs its application. *York Indus. Ctr., Inc. v. Mich. Mut. Liab. Co.*, 271 N.C. 158, 162, 155 S.E.2d 501, 505 (1967) ("Since the word . . . is defined in the amended policy, it must be given that meaning, regardless of whether a broader or narrower meaning is customarily given to the term, the parties being free, apart from statutory limitations, to make their contract for themselves and to give words therein the meaning they see fit."). This Court stated, "all parts of an insurance policy are to be construed harmoniously so as to give effect to each of the policy's provisions." *Nationwide Mut. Ins. Co.*, 115 N.C. App. at 198, 444 S.E.2d at 667.

### B. Duty to Defend/Duty to Indemnify

A policyholder claiming coverage under an enforceable insurance policy triggers two independent duties the carrier owes to the insured: the duty to defend and the duty to indemnify. *See Harleysville Mut. Ins. Co.*, 364 N.C. at 6-7, 692 S.E.2d

at 610-11. Our Court has held: "the insured has the burden of bringing itself within the insuring language of the policy." *Kubit v. MAG Mut. Ins. Co.*, 210 N.C. App. 273, 283, 708 S.E.2d 138, 147 (2011) (citation and alteration omitted).

If the insured party meets this burden, the burden shifts to the insurer to "prove that a policy exclusion excepts the particular injury from coverage." *Id.* (citation omitted). If the insurer meets this burden, the burden shifts back to the insured to "prov[e] that an exception to the exclusion exists and applies to restore coverage." *Home Indem. Co. v. Hoechst Celanese Corp.*, 128 N.C. App. 189, 202, 494 S.E.2d 774, 783 (1998) (citation omitted).

Our Supreme Court examined the interplay between a duty to defend and a duty to indemnify in *Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 691, 340 S.E.2d 374, 377 (1986) holding:

> Generally speaking, the insurer's duty to defend the insured is broader than its obligation to pay damages incurred by events covered by a particular policy. An insurer's duty to defend is ordinarily measured by the facts as alleged in the pleadings; its duty to pay is measured by the facts ultimately determined at trial. *When the pleadings state facts demonstrating that the alleged injury is covered by the policy, then the insurer has a duty to defend, whether or not the insured is ultimately liable.* Conversely, when the pleadings allege facts indicating that the event in question is not covered, and the insurer has no knowledge that the facts are otherwise, then it is not bound to defend.

*Id.* (emphasis supplied). An insurer is excused from its duty to defend when "the facts are not even arguably covered by the policy." *Id.* at 692, 340 S.E.2d at 378.

Our Supreme Court further explained an insurer's duty to defend in *Waste Management*: "Where the insurer knows or could reasonably ascertain facts that, if proven, would be covered by its policy, the duty to defend is not dismissed because the facts alleged in a third-party complaint appear to be outside [of] coverage, or within a policy exception to coverage." *Id.* at 691, 340 S.E.2d at 377 (citation omitted).

Later in *Harleysville Mut. Ins. Co.*, the Court articulated a "comparison test" to read the complaint and the policies at issue "side by side" to determine whether an insurer has a duty to defend. *Harleysville Mut. Ins. Co.*, 364 N.C. at 6, 692 S.E.2d at 610. A court takes "the facts as alleged in the complaint . . . are true and compared to the language of the insurance policy. If the insurance policy provides coverage for the facts as alleged, then the insurer has a duty to defend." *Id.* at 7, 692 S.E.2d at 611.

This Court extended the "comparison test" from just allegations in the pleadings and the policy in *Waste Management* and *Harleysville Mut. Ins. Co.* to also include "facts learned from the insured and facts discoverable by reasonable investigation may also be considered." *Duke Univ. v. St. Paul Fire & Marine Ins. Co.*, 96 N.C. App. 635, 638, 386 S.E.2d 762, 764 (1990).

This Court has held the insurer's duty to defend is

> broader than the duty to indemnify *only* in the sense that an unsubstantiated allegation requires an insurer to defend against it so long as the allegation requires an insurer to defend against it so long as the allegation is of a covered injury; however, even a meritorious allegation

> cannot obligate an insurer to defend if the alleged injury is
> not within, or is excluded from, the coverage provided by
> the insurance policy.

*Kubit v. MAG Mut. Ins. Co.*, 210 N.C. App. 273, 279, 708 S.E.2d 138, 145 (2011) (citation and quotation marks omitted). "Because the duty to defend may be broader than the duty to indemnify we address the duty to defend because if it fails, so too does the duty to indemnity." *N.C. Farm Bureau Mut. Ins. V. Phillips*, 255 N.C. App. 758, 764, 805 S.E.2d 262, 366 (2017).

### C. Decedent's Classification as an Employee

Defendant-estate argues the trial court erred in classifying Decedent as an "employee." Defendant asserts Decedent is properly classified as a volunteer, which falls outside of the Employer's Liability Exclusion, in Young's general liability policy. Defendant further asserts Young's conflicting testimony he was not going to pay Decedent for her work. OSH investigator Laurie testified that during his investigation on 8 and 9 October 2019, Young had told him Decedent had worked for him several days in the past years, he had paid her for the work, and he was going to pay her for the day of the accident. Later on 9 October 2019, after receipt of notice of OSH violations, Young stated for the first time he was not going to pay Decedent for her work that day and asserted Decedent was a volunteer on the jobsite.

The trial court rejected this claim as not credible and found Decedent was working for Young for wages on the day of the accident. Defendant's argument is contrary to longstanding precedent: "Where the trial judge sits as the trier of the

facts, his findings of fact are conclusive on appeal when supported by competent evidence. This is true even though there may be evidence in the record to the contrary which could sustain findings to the contrary." *General Specialties Co. v. Nello L. Teer Co.*, 41 N.C. App. 273, 275, 254 S.E.2d 658, 660 (1979) (citations omitted).

The trial judge passed upon the credibility of Young and Laurie's testimonies. "The appellate court cannot substitute itself for the trial judge in this task." *Id.* (citation omitted). Competent evidence supports the trial court's finding and conclusion Decedent was an employee and not a volunteer. Defendant's argument is overruled.

### D. Temporary Worker Classification

Defendant argues the trial court erred in not classifying Decedent as a "temporary worker" for Young. The policy also excludes a "temporary worker" from in the policy's exclusions from coverage. Under Young's general liability policy, a "temporary worker" is defined as "a person who is furnished to you to substitute for a permanent 'employee' on leave or to meet seasonal or short-term workload conditions."

The trial court also concluded Decedent was not and had not been "furnished to" Young by a third party. The trial court found Young had no permanent employees out on leave, nor did Young have any seasonal or short-term workload conditions, requiring additional help from Decedent or anyone else. Young had hired Locklear Roofing to do the work and to install the materials. The policy does not define

"furnish" or "furnished to," nor does any precedent binding upon this Court define either term.

Defendant asserts the language "furnished to" does not require a third party to provide the labor and further asserts, if this Court requires action by a third party, Decedent was "furnished" to Young by Blount. Defendant cites *Canal Ins. Co. v. Nat'l House Movers, LLC*, 777 S.E.2d 418, 419-20 (S.C. Ct. App. 2015), wherein a company with one permanent employee was contacted by a third party, who asked if the individual needed help on a specific project. The company needed help, and the third party contacted another individual and asked them to help on the job. *Id.* That individual contacted by the third party went to the jobsite, worked, and was injured. *Id.* The individual filed a lawsuit against the company. The company sought a declaratory judgment holding the individual was an employee, who was barred from coverage, and not a temporary worker. *Id.*

The South Carolina Court of Appeals laid out a two-part analysis: 1. whether the individual was hired to "meet seasonal or short-term workload conditions;" and, 2. whether the individual the temporary worker was "furnished to" the insured. *Id.* at 421. While the Court held to "furnish" needs third party involvement, the phrase was ambiguous, and the ambiguity was to be construed in favor of coverage. *Id.* at 424.

Plaintiff also cites to other persuasive authorities to support its position "furnished to" specifically requires third-party involvement. We need not decide

whether "furnished to" requires third-party involvement. Decedent was not there to meet the seasonal or short-term workload conditions for Young. Decedent was there because she needed to earn money to repair her car. Young testified and the trial court found and concluded Young had no short-term work conditions requiring additional help from Decedent. *General Specialties Co.*, 41 N.C. App. at 275, 254 S.E.2d at 660. Defendant's argument is overruled.

### E. Competent Findings

Defendant asserts the trial court erred because no competent findings support its conclusion Decedent was an employee. Young testified he had no intention to pay her and the OSH investigation is inapplicable because OSH uses a different definition of "employee," as compared with its use in the general liability policy. As we held above, the trial court heard conflicting evidence, weighed the credibility, found, and concluded Young intended to pay Decedent for her work that day.

While OSH may use a different definition of "employee" from that used in the policy, the trial court did not declare Decedent was an employee based on Young's admission in the OSH settlement. The trial court instead focused on Young's interactions with Laurie concerning if he was going to pay Decedent, to examine Defendant and Young's claims of whether Decedent was on the job site that day as a volunteer. Defendant's argument is overruled.

### VII.   Conclusion

Plaintiff's cross-appeal on a denial of summary judgment is not properly before

this Court. *WRI/Raleigh, L.P.*, 183 N.C. App. At 252, 644 S.E.2d at 246-67.  Decedent was not either a "volunteer" or "temporary employee" for Young.  The trial court heard and reconciled the evidence and concluded Decedent was an "employee" of Young.

The trial court made supported and competent findings to support its declaratory judgment concluding the policy's Employer's Liability Exclusion bars coverage for all of Defendant's claims against Young and Plaintiff has no duty to defend or indemnify Young.  The judgment of the trial court is affirmed.  *It is so ordered.*

AFFIRMED.

Judges WOOD and MURRY concur.