DAVID MICHAEL BAIN AND DAVID H. BAIN, PLAINTIFFS v. UNITRIN AUTO AND
HOME INSURANCE COMPANY, DEFENDANT

No. COA09-1524

(Filed 15 March 2011)

**1. Insurance— duty to defend—defense costs**

The trial court did not err in granting summary judgment in favor of defendant insurance company on plaintiffs' claim for reimbursement for expert witness fees where plaintiffs failed to offer any evidence that the expert fees were defense costs.

**2. Insurance— duty to defend—equitable estoppel—no evidence of reliance**

Defendant insurance company was not equitably estopped from claiming that the services of an expert witness who was hired by plaintiffs in conjunction with their negligence claim were not defense costs. Plaintiffs failed to demonstrate that they relied upon any statement or conduct of defendant or its attorney.

**3. Insurance— duty to defend—defense costs—unjust enrichment—contract**

Plaintiffs' claim that defendant was unjustly enriched by receiving the benefit of plaintiffs' expert witness's services with-

out having to pay for them was overruled. The doctrine of unjust enrichment did not apply where, as here, a contract between the parties existed.

Appeal by plaintiffs from order entered 14 September 2009 by Judge Edgar B. Gregory in Guilford County Superior Court. Heard in the Court of Appeals 28 April 2010.

*Forman Rossabi Black, P.A., by Amiel J. Rossabi and Michael C. Taliercio, for plaintiffs-appellants.*

*McAngus Goudelock & Courie, by John T. Jeffries and James D. McAlister, for defendant-appellee.*

GEER, Judge.

Plaintiffs David Michael Bain ("Michael Bain") and David H. Bain ("David Bain") appeal from the trial court's grant of summary judgment to defendant Unitrin Auto and Home Insurance Company. Michael Bain, an insured under David Bain's policy with Unitrin, brought suit for personal injuries arising out of an automobile accident ("the underlying action"). After the defendants in the underlying action counterclaimed for property damage, Unitrin retained counsel to defend the counterclaim in accordance with its policy's duty to defend. Plaintiffs contend that Unitrin is liable for expenses incurred for an expert witness who testified on Michael Bain's behalf in the underlying action. Because plaintiffs have not presented evidence sufficient to create a genuine issue of material fact as to whether the expert's services constitute a "defense cost" for which Unitrin is responsible, we affirm.

## Facts

On or about 11 September 2005, Unitrin issued an automobile insurance policy to David Bain covering the period from 11 September 2005 through 11 March 2006. Pursuant to that policy, Unitrin agreed to insure, among other things, a GMC van owned by David Bain and David Bain's son, Michael Bain.

The policy provided with respect to payment of damages and costs:

We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident. Damages include prejudgment interest awarded against the "insured." We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. *In addition*

*to our limit of liability, we will pay all defense costs we incur.*
Our duty to settle or defend ends when our limit of liability for
this coverage has been exhausted. We have no duty to defend any
suit or settle any claim for "bodily injury" or "property damage"
not covered under this policy.

(Emphasis added.)

On 20 September 2005, Michael Bain, who was driving the GMC
van with the consent of David Bain, collided with Kevin Ray Bellow,
who was driving a dump truck owned by his employer, the Koury
Corporation. Michael Bain was significantly injured in the accident
and filed a personal injury lawsuit against Bellow and Koury on 5
December 2005. In connection with that action, Michael Bain retained
an engineering expert, Dr. Rolin F. Barrett, Sr., who began working on
the case on 23 November 2005, before suit was filed. Dr. Barrett
performed a site inspection of the intersection where the accident
occurred and examined the vehicles involved on 12 January 2006.

On 6 February 2006, Bellow and Koury filed an answer, including
a counterclaim for property damage to the dumptruck. Unitrin
received notice of the counterclaim on 2 March 2006, and on 9 March
2006, Unitrin acknowledged that it had a duty to defend the counter-
claim under the policy. The same day, Unitrin retained Joseph
Brotherton to defend the counterclaim.

Dr. Barrett's deposition was taken in the underlying action on 9
May 2007. He testified that, in his opinion, based on the ordinary reac-
tion times for drivers, the vehicles involved, the road conditions at
the time of the accident, and the likely speed of the vehicles when
they collided, Michael Bain could not have avoided the accident. Mr.
Brotherton attended that deposition, and asked Dr. Barrett the fol-
lowing questions:

Q. Dr. Barrett, I didn't hire you to do anything in this case,
did I?

A. That's correct. You did not.

Q. And you've described to us in some detail the work you've
done, the measurements you've taken, and that sort of thing
and—and that is reflected by the documents—some of the docu-
ments contained in Exhibit 1, correct?

A. Yes.

Q. All right. Now—and—and you have formed some opinions and you have told us about all of the opinions that you have formed thus far?

A. Correct.

Q. Without you doing any further work, if—if you were asked the question that were to put the facts that you're aware of and the knowledge that you have to looking at it from a little different angle, you could form other opinions without doing any further work that you have not formed as of today?

A. That's certainly possible.

MR. BROTHERTON: Okay. Thank you.

No transcript of the trial proceedings in the underlying action was filed with this Court. It is undisputed by the parties, however, that Michael Bain's privately-retained counsel, Amiel Rossabi, tried the majority of the case. Mr. Brotherton did not participate in the jury selection, opening statements, or in examining or cross-examining any witnesses. Mr. Brotherton did, however, give a closing argument. The record on appeal contains no transcript or detailed description of that closing argument. Michael Bain submitted an affidavit, stating that, while he did not recall everything that Mr. Brotherton argued, he did remember that Mr. Brotherton "argued, among other things, that Dr. Barrett's opinions should be adopted and he did not in any way disavow Dr. Barrett's testimony."

On 3 August 2007, the jury returned a verdict finding that Michael Bain was not injured by the negligence of Bellow, and that Bellow and Koury were not injured by the negligence of Michael Bain. Dr. Barrett's invoices for providing expert services in the case totaled $20,966.28. Unitrin has refused to pay any portion of these expenses.

Plaintiffs filed this action on 7 November 2008 against Unitrin and Insurance Associates of the Triad, Inc., seeking recovery of the expenses associated with Dr. Barrett. Plaintiffs voluntarily dismissed the claim against Insurance Associates on 22 June 2009. On 14 September 2009, the trial court granted summary judgment to Unitrin. Plaintiffs timely appealed to this Court.

## Discussion

[1] The parties agree that the insurance policy in this case obligated Unitrin to defend Michael Bain against the counterclaim asserted by

Koury and Bellow in the underlying action and to pay for costs incurred by Unitrin in that defense. The question presented by this action is what constitutes a defense cost for which an insurer is liable under its duty to defend.

Usually, this issue arises when an insured has been sued and then also asserts a counterclaim. For example, in *Duke University v. St. Paul Mercury Insurance Co.*, 95 N.C. App. 663, 665, 384 S.E.2d 36, 37-38 (1989), Duke University sued its general liability insurer, St. Paul, to recover attorneys' fees Duke incurred as a defendant in another lawsuit in which Duke had asserted counterclaims. The trial court concluded that Duke could only recover the portion of the fees incurred that were reasonable and necessary for defending matters covered by the St. Paul policy. *Id.* at 668, 384 S.E.2d at 39. Duke was not entitled to recover fees incurred in the prosecution of its counterclaims. *Id.*

On appeal, this Court affirmed, explaining that " '[a]n insurer, being obligated only to defend claims brought "against" the insured, is not required to bear the cost of prosecuting a counterclaim on behalf of the insured.' " *Id.* at 680, 384 S.E.2d at 46 (quoting A. Windt, *Insurance Claims and Disputes* § 4.39 (1982)). The Court adopted the following commentary as "the correct rule":

> "An insurer, being obligated only to defend claims brought 'against' the insured, is not required to bear the cost of prosecuting a counterclaim on behalf of the insured. Because of the compulsory counterclaim rule, however, the insurer should not be allowed to direct the counsel that it hires on behalf of the insured to ignore the existence of counterclaims. *The assumption of the insured's defense necessarily entails an obligation not to conduct the defense in a manner that will prejudice the insured's rights.* Failure to advise the insured of the existence of a counterclaim that, if not asserted, will be lost should constitute a breach of that obligation.
>
> As a practical matter, therefore, when hiring defense counsel, the insurer should advise counsel that *it will not bear the costs of prosecuting a counterclaim, but it should not attempt to limit the attorney in connection either with investigating and evaluating possible counterclaims or with giving the insured advice with respect to such claims. If it does, it should be deemed to have breached its duty to defend* and, assuming the insured had a meritorious compulsory counterclaim that was lost

as a result of the insurer's action, the insurer should be liable for the value of the barred claim."

*Id.* at 679-80, 384 S.E.2d at 46 (emphasis added) (quoting A. Windt, *supra* § 4.39).

Here, there can be no question that Unitrin was not liable for the costs of prosecuting Michael Bain's claims against Koury and Bellow. Further, Unitrin could not interfere with Michael Bain's privately-retained counsel's investigation and prosecution of those affirmative claims. Unitrin could not, therefore, limit Michael Bain's decision to incur expenses, including expert witness fees, that he and his privately-retained counsel deemed reasonable and necessary for pursuing his claims for relief.

The question remains, however, whether plaintiffs have presented any basis for considering the expert fees "defense costs." Unitrin's policy provided: "[W]e will pay all defense costs we incur." In construing this same language our Supreme Court held that " '[d]efense costs' refer to costs associated with the process of defending a claim such as attorney fees, deposition expenses, and court costs including such items as subpoena and witness fees." *Sproles v. Greene*, 329 N.C. 603, 611, 407 S.E.2d 497, 502 (1991). The issue is, therefore, whether Dr. Barrett's expenses were a cost associated with the process of defending the property damage counterclaim.

In support of its motion for summary judgment, Unitrin points to the fact that Dr. Barrett was hired prior to the filing of the underlying action by counsel whom Michael Bain had privately retained to represent him in connection with his personal injury claims. Mr. Brotherton, the attorney Unitrin hired to defend Michael Bain in connection with the property damage counterclaim, stated in his affidavit: "[A]t no time during my representation of David Michael Bain in the defense of the counterclaim was I consulted about hiring Dr. Rolin Barrett, Sr. as an expert witness to defend the counterclaim pending against David Michael Bain."

With respect to the need for an expert witness to defend the property damage counterclaim, Mr. Brotherton stated: "[I]n my representation of David Michael Bain in the defense of the counterclaim pending against him, I would not have hired an expert to help defend against the counterclaim." He explained that it was his opinion that he could have successfully defended the counterclaim without Dr. Barrett's testimony.

According to Mr. Brotherton, he never set up a meeting to discuss the case with Dr. Barrett, and the first time he met with him was at his deposition. Mr. Brotherton attended the deposition, but only briefly questioned Dr. Barrett. He asked, "Dr. Barrett, I didn't hire you to do anything in this case, did I?" Dr. Barrett responded, "That's correct. You did not." According to Mr. Brotherton, at trial, he did not elicit "any testimony from Dr. Rolin Barrett, Sr. with respect to his findings in this matter."

In arguing that Dr. Barrett's expenses were a defense cost incurred by Unitrin, plaintiffs did not submit any evidence that disputed Mr. Brotherton's affidavit. Specifically, they do not dispute that Dr. Barrett was retained prior to the existence of the counterclaim for the purpose of serving as an expert witness in support of Michael Bain's personal injury claims and that Mr. Brotherton was not consulted regarding whether Dr. Barrett should be used in conjunction with the defense of Koury's property damage claim. They also have presented no evidence that expert testimony was reasonably necessary to defend the counterclaim.

Instead, plaintiffs first argue that Unitrin never explicitly stated that it believed Dr. Barrett's assistance was unnecessary for the counterclaim. Mr. Brotherton's question at Dr. Barrett's deposition did precisely that, however.

Plaintiffs also argue that because Mr. Brotherton allowed the privately-retained counsel to control the action and took no active steps to control the defense of the counterclaim, Unitrin intentionally relinquished or waived control of the defense of the counterclaim and cannot now assert that Dr. Barrett's testimony was unnecessary to the counterclaim. Plaintiffs cite no North Carolina authority or any authority at all involving similar circumstances to support this position.[1] Because this action was originally filed as a personal injury claim against Koury and its employee, and Unitrin's duty to defend

---

1. Plaintiffs cite an unpublished opinion from the United States District Court for the Western District of Texas, *Landmark Am. Ins. Co. v. Ray*, 2006 U.S. Dist. LEXIS 95517, 2006 WL 4092436 (W.D. Tex. Dec. 21, 2006). *Ray*, however, involved the more traditional context of the insured being sued and then asserting counterclaims. The lawsuit itself triggered the duty to defend, but the carrier not only did not provide counsel for four months, but then the carrier's counsel did not actively participate in the action, allowing privately-retained counsel to take responsibility for the case. The court found that the carrier had not provided the insured with any substantive defense. *Id.*, *26, 2006 WL 4092436, *7. The privately-retained counsel ultimately spent 49% of his time on matters related to both the defense and the counterclaim, 47% of his time solely on counterclaim-related tasks, and 4% of his time on solely defense-related

only arose upon the filing of Koury's counterclaim for property damage to its truck, we see no basis for concluding that Unitrin's attorney, by allowing the privately-retained attorney to continue to take the lead in the action, waived the right to argue that certain expenses primarily related to the affirmative claims were not necessary to defend the counterclaim.

The defense mounted should be in proportion to the claim. If the insurer insisted on taking the lead in the action, then we would have the tail (the smaller value property damage claim) wagging the dog (the personal injury claims) and a risk of the insured claiming that the insurer had violated the "rule" set out in *Duke University* prohibiting the insurer from interfering with the prosecution of the affirmative claims. The consequence, under *Duke University*, could be a determination that the insurer had breached its duty to defend and, if the retained attorney's actions caused the insured to lose his affirmative claims, that the insurer was liable for the value of those claims. 95 N.C. App. at 680, 384 S.E.2d at 46. We decline to hold, under the circumstances of this case, that Unitrin's actions waived any argument that Dr. Barrett's testimony was not necessary to the defense of the counterclaim.

Plaintiffs next contend that Dr. Barrett's testimony was associated with the defense of the counterclaim because (1) Mr. Brotherton attended Dr. Barrett's deposition, (2) Dr. Barrett's trial testimony had the effect of supporting the defense of the counterclaim, and (3) Mr. Brotherton "incorporated and adopted the testimony and opinions of Dr. Barrett" in his closing argument. Mere attendance at the deposition cannot be deemed use of Dr. Barrett's testimony in defense of the counterclaim when plaintiffs have presented no evidence that Mr. Brotherton participated in that deposition other than to establish that he had not retained Dr. Barrett to assist with the defense of the counterclaim.

With respect to the trial testimony, plaintiffs appear to acknowledge that the mere fact that evidence supported Mr. Brotherton's position on the counterclaim was not sufficient to establish that

tasks. *Id.*, *16, 2006 WL 4092436, *5. The district court ordered the carrier to reimburse the insured for those fees and expenses that the court deemed defense-related or necessary to both the defense and the counterclaims. *Id.*, *34-*35, 2006 WL 4092436, *10. Here, in contrast, the lawsuit was initiated by the insured; the expenses were incurred for the affirmative claims, which predominated over the property damage counterclaim; there was no contention during the underlying action that Unitrin was breaching its duty to defend the much more limited property damage counterclaim; and plaintiffs have made no showing that the expert services were a necessary part of defending the counterclaim.

Unitrin incurred the cost without also a showing that Mr. Brotherton used the testimony in the defense. In opposition to Unitrin's motion for summary judgment, plaintiffs submitted the affidavit of Michael Bain. He acknowledged in that affidavit that Mr. Brotherton did not participate in examining or cross-examining any of the witnesses, which would include Dr. Barrett.[2] In support of their contention that Mr. Brotherton did rely upon Dr. Barrett at trial, plaintiffs point to Michael Bain's assertion that Mr. Brotherton relied upon the testimony in his closing argument: "While I do not recall everything Mr. Brotherton said during his closing argument during the trial, Mr. Brotherton argued, among other things, that Dr. Barrett's opinions should be adopted and he did not in any way disavow Dr. Barrett's testimony."

On appeal, plaintiffs properly do not argue that the failure to disavow the testimony gave rise to a duty to pay for it. Such a disavowal would likely constitute a breach of the duty to defend. Plaintiffs do, however, expand upon Mr. Bain's statement and argue not just that Mr. Brotherton argued "that Dr. Barrett's opinions should be adopted" by the jury, but that Mr. Brotherton "incorporated and adopted the testimony and opinions of Dr. Barrett." The sole support for this argument is the single statement included in Mr. Bain's affidavit.

We cannot tell from Mr. Bain's affidavit what Mr. Brotherton actually said about Dr. Barrett or his opinions. At best, the affidavit indicates that Mr. Brotherton argued to the jurors that they should find Dr. Barrett's testimony credible. The affidavit does not necessarily go as far as plaintiffs' brief. The record, however, contains nothing more specific. Plaintiffs did not submit a transcript of Mr. Brotherton's closing argument; there is no deposition or other discovery asking Mr. Brotherton to summarize or describe his closing argument. While the record contains the transcript of Dr. Barrett's deposition in the underlying action, plaintiffs have not provided us with his trial testimony or other evidence of what he said at trial, so we cannot know precisely what opinions Mr. Brotherton urged the jury to adopt. Without being able to read Dr. Barrett's trial testimony and Mr. Brotherton's closing arguments, we have no way of determining to

---

2. The Bain affidavit also states: "Mr. Brotherton talked with Dr. Rolin Barrett prior to and during the trial of this matter about his opinions in the case." Since Mr. Bain does not indicate how he obtained personal knowledge regarding these conversations between Mr. Brotherton and Dr. Barrett, this portion of the affidavit is inadmissible. See N.C.R. Civ. P. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, . . . and shall show affirmatively that the affiant is competent to testify to the matters stated therein.").

what extent Unitrin relied upon or used Dr. Barrett's services in the defense of the counterclaim and, therefore, cannot determine whether those services should count as a defense cost for which Unitrin is responsible.

In sum, plaintiffs seek to hold Unitrin liable for expert witness fees for an expert plaintiffs retained to support Michael Bain's claims for personal injury. The undisputed evidence is that the expert witness was hired prior to the existence of the counterclaim giving rise to Unitrin's duty to defend; the counterclaim was only for property damage to a truck; Unitrin's retained counsel was never consulted about using the expert witness; Unitrin's retained counsel did not believe it was necessary to have an expert witness to defend the property damage claim; Unitrin's retained counsel believed that he could prevail on the property damage claim in the absence of expert testimony; Unitrin's retained counsel did not participate in the deposition of the expert witness other than to establish that counsel had not hired the witness to assist on the counterclaim; and Unitrin's retained counsel did not question the expert witness at trial.

The sole evidence offered by plaintiffs in support of their claim that the expert witness expenses were associated with the defense of the claim for property damage to the truck is that Unitrin's retained counsel made some unspecified statement that the jury should adopt the expert witness' opinions. We hold that the reference in Mr. Bain's affidavit, standing alone, is insufficient evidence that Mr. Brotherton used Dr. Barrett's testimony in a manner that effectively made it a defense cost incurred by Unitrin.

[2] Alternatively, plaintiffs contend that Unitrin is equitably estopped from claiming that Dr. Barrett's services are not a defense cost. "Equitable estoppel arises when one party, by his acts, representations, or silence when he should speak, intentionally, or through culpable negligence, induces a person to believe certain facts exist, and that person reasonably relies on and acts on those beliefs to his detriment." *Gore v. Myrtle/Mueller*, 362 N.C. 27, 33, 653 S.E.2d 400, 405 (2007).

In *Duke University*, 95 N.C. App. at 672, 384 S.E.2d at 42, this Court held that in the absence of evidence that Duke University (the insured) had relied on conduct by its insurer indicating it would pay for some, if not all, of Duke's legal defense, the insurer was not equitably estopped from pleading the statute of limitations. The Court explained that " '[i]n order to warrant the application of the doctrine

of estoppel, it must be shown that the conduct of the party against whom waiver of the . . . limitation is claimed is such as to cause the adverse party to change his position by lulling him into false security, and causing him to delay or waive assertion of his rights to his damage.' " *Id.* at 672-73, 384 S.E.2d at 42 (quoting 18A Rhodes, *Couch on Insurance 2d* § 75:183, at 177 (1983)).

In this case, plaintiffs have failed to demonstrate that they relied upon any statement or conduct of Unitrin or Mr. Brotherton. Plaintiffs hired Dr. Barrett in connection with Michael Bain's lawsuit against Koury and Bellow well before the filing of the counterclaim and before Unitrin had any duty to defend. Indeed, Dr. Barrett had completed his actual investigation before the counterclaim was filed and Unitrin became involved in the case. Plaintiffs have pointed to no evidence that they were lulled by Unitrin into a false sense of security in connection with the expenses being incurred with respect to Dr. Barrett. They have not shown that they would have acted any differently with respect to Dr. Barrett if Unitrin or Mr. Brotherton had expressly stated that Unitrin would not reimburse plaintiffs for expert witness fees incurred.

Moreover, at Dr. Barrett's deposition, Mr. Brotherton confirmed on the record that he had not retained Dr. Barrett for any purpose. Any reliance after that date would not have been reasonable. We, therefore, hold that plaintiffs have not presented sufficient evidence of the elements of equitable estoppel to survive a motion for summary judgment.

[3] Finally, plaintiffs argue that Unitrin was unjustly enriched by receiving the benefit of Dr. Barrett's services without having to pay for them. It is well settled, however, that a claim for unjust enrichment is "a claim in quasi contract or a contract implied in law" and, therefore, "[i]f there is a contract between the parties the contract governs the claim and the law will not imply a contract." *Booe v. Shadrick*, 322 N.C. 567, 570, 369 S.E.2d 554, 556 (1988). *See also Atl. & E. Carolina Ry. Co. v. Wheatly Oil Co.*, 163 N.C. App. 748, 753, 594 S.E.2d 425, 429 ("The doctrine of unjust enrichment is based on 'quasi-contract' or contract 'implied in law' and thus will not apply here where a contract exists between two parties."), *disc. review denied*, 358 N.C. 542, 599 S.E.2d 38 (2004); *Delta Envtl. Consultants of N.C., Inc. v. Wysong & Miles Co.*, 132 N.C. App. 160, 165, 510 S.E.2d 690, 694 (reversing trial court's decision to allow unjust enrichment claim on grounds that two contracts "govern[ed] the relationship

IN RE FORECLOSURE OF HALL

[210 N.C. App. 409 (2011)]

between the parties with regard to payment and services rendered" and, therefore, "an action for breach of contract, rather than unjust enrichment, is the proper cause of action"), *disc. review denied,* 350 N.C. 379, 536 S.E.2d 70 (1999).

Here, the parties' relationship, including Unitrin's liability for any costs of the action under its duty to defend, was governed by the Unitrin insurance policy. Since a contract exists between the parties governing the claim, no claim for unjust enrichment can arise. Accordingly, the trial court properly granted summary judgment as to this claim as well.

Affirmed.

Judges ROBERT C. HUNTER and STEPHENS concur.